J.S17032/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RACEAN BRITT, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1298 WDA 2015 |

Appeal from the Judgment of Sentence August 12, 2015
in the Court of Common Pleas of Fayette County Criminal Division
at No(s): CP-26-CR-0001225-2014

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MARCH 22, 2016**

Appellant, Racean Britt, appeals from the judgment of sentence entered in the Fayette County Court of Common Pleas following his convictions, after a jury trial, for persons not to possess firearms,[1] firearms not to be carried without a license,[2] possession with intent to deliver a controlled substance,[3] possession of cocaine,[4] and possession of marijuana.[5] He challenges the admission of his incriminating statements pursuant to the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105.

[2] 18 Pa.C.S. § 6106.

[3] 35 P.S. § 780-113(a)(30).

[4] 35 P.S. § 780-113(a)(16).

[5] 35 P.S. § 780-113(a)(16).

*corpus delicti* rule, the admission of evidence without the support of witness testimony, and the sufficiency of the evidence. We affirm.

We adopt the facts and procedural history set forth by the trial court's well-reasoned opinion. **See** Trial Ct. Op., 9/28/15, at 2-6. On August 12, 2015, the trial court sentenced Appellant to an aggregate term of four to eight years' imprisonment and probation. Appellant did not file a post-sentence motion. The instant timely appeal followed wherein Appellant raises the following issues:

> Did the court err in permitting the Commonwealth to introduce [Appellant's] incriminating statements without evidence of the crimes charged in violation of *corpus delicti*; specifically statements of ownership of the controlled substances and firearm?
>
> Did the court err in permitting the introduction of evidence recovered from DiSilvestro's apartment to be used against the Appellant without DiSilvestro appearing to testify that she gave consent to search?
>
> Did the Commonwealth fail to prove beyond a reasonable doubt that Appellant ever possessed the firearm or the controlled substances in the instant case?

Appellant's Brief at 7.[6]

Appellant argues that his incriminating statements, regarding his ownership of contraband, were improperly admitted at trial in contravention of the *corpus delicti* rule. Appellant also avers that the statement of a witness, which permitted a search of her residence, and the evidence

---

[6] We note that we have reordered Appellant's issues on appeal for ease of disposition purposes.

obtained therefrom, were improperly admitted absent the opportunity to cross-examine that witness at trial. Lastly, Appellant asserts that the evidence presented was insufficient to establish that he possessed any of the contraband at issue.

We begin by noting that, "[t]he *corpus* [*delicti*] rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." **Commonwealth v. Dupre**, 866 A.2d 1089, 1097 (Pa. Super. 2005) (citations omitted). However, "[t]he Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with accident." **Id.** at 1098 (citation omitted). Further, it is well settled that the *corpus delicti* may be proven by circumstantial evidence. **Commonwealth v. Hogans**, 584 A.2d 347, 349 (Pa. Super. 1990).

In order to preserve a suppression claim, a timely suppression motion must be filed. Pa.R.Crim.P. 581(B). In addition, "[i]t is well established that certain out-of-court statements offered to explain the course of police conduct are admissible on the basis that they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." **Commonwealth v. Jones**, 658 A.2d 746, 751 (Pa. 1995) (citations

omitted).[7] However, the trial court "must balance the prosecution's need for the statements against any prejudice arising therefrom." *Id.*

Our standard of review for a sufficiency of the evidence challenge is as follows:

> In reviewing the sufficiency of the evidence, we examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's findings of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

*Commonwealth v. Mattison*, 82 A.3d 386, 392 (Pa. 2013) (citations omitted) *cert. denied*, 135 S. Ct. 221 (2014).

Also pertinent is the doctrine of constructive possession:

> In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control. An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.

*Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013) (quotation marks and citations omitted).

After a thorough review of the record, the briefs of the parties, the

---

[7] We note that we may rely on cases predating the enactment of the Pennsylvania Rules of Evidence to the extent that such cases are in accord with the rules. *See Commonwealth v. Aikens*, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

applicable law, and the well-reasoned opinion of the Honorable Steve P. Leskinen, we conclude Appellant's issues merit no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. *See* Trial Ct. Op. at 6-14 (finding: (1) The Commonwealth presented ample evidence of the *corpus delicti* of the crimes charged through corroborating testimony; (2) to the extent Appellant seeks to suppress evidence, his claim is waived due to his failure to file a suppression motion and the witness statement in question was admissible to show the information upon which the police acted; and (3) the evidence was sufficient to establish that Appellant constructively possessed the contraband in question, where the gun and drugs were recovered in close proximity to Appellant, and other evidence of ownership was discovered upon police investigation). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2016

- 5 -

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION |
| v. | |
| RACEAN BRITT, | No. 1225 of 2014 |
| Defendant. | |

# OPINION

Mark Brooks, Esq. Assistant District Attorney
Michael Garofalo, Esq. for the Defendant

LESKINEN, J.

Before the Court are the "Concise Issues" of errors complained of on appeal, filed on behalf of Defendant Racean Britt (hereinafter "Defendant"). On August 5, 2015, a jury found Defendant guilty of Persons Not to Possess Firearms, Firearms Not to be Carried Without a License, Possession With Intent to Deliver, Possession of cocaine, and Possession of marijuana. On August 12, 2015, the Court sentenced the Defendant to a period of incarceration of not less than three (3) years nor more than six (6) years on Count One, Persons Not to Possess Firearms. This sentence is to run concurrent to Defendant's parole pending at Case Number 1227 of 2013, Count One.

The Court further sentenced the Defendant to not less than twelve (12) months nor more than twenty-four (24) months on Count Three, Possession With Intent to Deliver, for an aggregate state prison sentence of not less than four (4) years nor more than eight (8) years. Defendant also received consecutive terms of probation on both

1

counts to follow his prison sentence. Defendant filed this timely appeal on August 20, 2015.

Defendant raises the following issues on appeal:

"**ISSUE NO. 1:** DID THE COURT ERR IN PERMITTING THE COMMONWEALTH TO INTRODUCE THE DEFENDANT'S INCRIMINATING STATEMENTS WITHOUT EVIDENCE OF THE CRIMES CHARGED IN VIOLATION OF CORPUS DELECTI (SIC); SPECIFICALLY STATEMENTS OF OWNERSHIP OF THE CONTROLLED SUBSTANCES AND FIREARM?

**ISSUE NO. 2:** DID THE COMMONWEALTH FAIL TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT EVER POSSESSED THE FIREARM OR THE CONTROLLED SUBSTANCES IN THE INSTANT CASE?

**ISSUE NO. 3:** DID THE COURT ERR IN PERMITTING THE INTRODUCTION OF EVIDENCE RECOVERED FROM DILSILVESTRO'S (SIC) APARTMENT TO BE USED AGAINST THE APPELLANT WITHOUT DISILVESTRO APPEARING TO TESTIFY HAT (SIC) SHE GAVE CONSENT TO SEARCH?"

## BACKGROUND

Around 1:15 a.m. on June 22, 2014, Officers Alexis Metros and Thomas O'Barto of the Masontown Borough Police were on patrol in separate vehicles. (Trial Tr. Day 1, 23, Aug. 4, 2015). The officers received a 9-1-1 call about gunshots fired at Fort Mason Village and a report of a dark gold Jeep leaving the scene. *Id.* Officer O'Barto located a vehicle matching that description traveling east on Smithfield/Masontown Road and executed a felony stop of the vehicle. *Id.* at 24, 53. Officer Metros then responded to that location to assist. *Id.*

2

Upon Officer Metros' arrival at the scene, the driver, Deandra DiSilvestro, was already outside of the vehicle. *Id.* The Defendant testified that about two minutes elapsed before Ms. DiSilvestro first exited the vehicle after the stop. *Id.* at 92. The officers then requested for the passenger, the Defendant, to exit the vehicle with his hands up. *Id.* at 25. As the Defendant exited, he had a black object in his hands, and the officers ordered him to immediately drop it. *Id.* The Defendant then placed the object, later identified as a cell phone, in the passenger door of the vehicle, and the officers handcuffed him. *Id.* at 25, 43. While walking back to the patrol cars, Officer O'Barto verbally *Mirandized* both Ms. DiSilvestro and the Defendant. *Id.* at 62. The officers then placed the two suspects in the patrol cars. *Id.* at 26.

The officers determined that the car was registered to the driver, Deandra DiSilvestro. *Id.* at 60. The officers then searched the Jeep. *Id.* at 26. Under the front passenger seat, the officers found a loaded Ruger nine millimeter handgun and an orange magazine containing twelve bullets but capable of holding thirty rounds. *Id.* at 26-27, 57. In the passenger's side door, the officers noticed five loose rounds of nine millimeter ammunition. *Id.* at 27. The Defendant is a member of the class not permitted to have a firearm and had been a member of that class for a period of sixty days or longer as of June 22, 2014. *Id.* at 86. Defendant also did not have a license to carry a concealed firearm on his person or in a vehicle. *Id.* While the officers were searching the Jeep, the Defendant became belligerent, agitated, and was kicking the rear window and doors of Officer O'Barto's patrol car. *Id.* at 27, 60. Despite repeated warning from Officer O'Barto to stop kicking, the Defendant continued to do so. *Id.* at 27-28. As a result, Officer O'Barto pepper sprayed the Defendant, at which point he stopped kicking.

3

*Id.* at 28. After the Defendant had calmed down, the Defendant stated to the officers that the gun was his. *Id.* The Defendant also claimed ownership over the five loose rounds and that he had put them in the vehicle. *Id.* at 28-29, 63. Additionally, the officers found $316.00 in the Defendant's pocket. *Id.* at 63, 72.

The officers then transported the two individuals to the Masontown Police Department. *Id.* at 29. At the police station, Officer Metros searched Ms. DiSilvestro. *Id.* During the search, and while Officer Metros was present, Ms. DiSilvestro removed a baggie of cocaine and a baggie of marijuana from her vagina. *Id.* at 29-30. At the time of the search, DiSilvestro was wearing black sweat pants. *Id.* at 29. Officer Metros then gave the baggies containing the drugs to Officer O'Barto. *Id.* at 64. At trial, Officer O'Barto positively identified the baggies from evidence as the cocaine and marijuana removed from Ms. DiSilvestro. *Id.* at 66. When confronted about the drugs found on DiSilvestro, the Defendant admitted the drugs were his, that he had given the drugs for DiSilvestro to hide because he did not want to get caught with them. *Id.* at 30, 67. DiSilvestro then gave the police written consent to search her apartment. *Id.* at 30, 67.

Officer Metros next proceeded to search Apartment 21 in Fort Mason Village, the apartment leased to Deandra DiSilvestro. *Id.* at 31, 46. In the kitchen, Officer Metros found a sawed-off shotgun, two scales, a box of baggies, and several burnt marijuana blunts. *Id.* at 32. In the bedroom, the officer recovered an empty box for one of the scales and the Defendant's temporary photo identification card. *Id.* At trial, Officer Metros positively identified all items found in DiSilvestro's vehicle and her apartment that the police collected into evidence. *Id.* at 36-39. Officer O'Barto, qualified as an expert in the field of controlled substances investigation, identified the scales and

4

baggies as common items used in the sale of street level drugs. *Id.* at 50, 69, 71. A chemical analysis of one of the baggies confirmed it to be cocaine and that it weighed approximately 2.71 grams. *Id.* at 72. A chemical analysis of the other baggie confirmed it to be marijuana and that it weighed approximately 0.55 grams. *Id.* at 85. Based on all the evidence, Officer O'Barto testified at trial that he believed the cocaine was intended for sale. *Id.* at 72-73.

After completing the search of DiSilvestro's apartment, Officer Metros returned to the Masontown Police Department. *Id.* at 39. The police made the Defendant aware of what was found in the apartment. *Id.* at 39-40. Upon hearing this information, the Defendant claimed the shotgun "was absolutely his" and that he had owned it for many years. *Id.* 39-40, 68. The Defendant told the officers that he did not want his girlfriend, Ms. DiSilvestro, to get in trouble, "so he claimed [ownership of] all items [and] stated that they were his. [The officers] would ask [the Defendant] about each item and he would state that it was his."[1] *Id.* at 40, 60-61. During the police interview, the Defendant acted "very arrogant" and bragged to the officers about the value of his clothing, even though he was unemployed, and declared "he had three bitches that paid for him." *Id.* at 68.

Police charged the Defendant with Persons Not to Possess Firearms, Firearms Not to be Carried Without a License, Possession With Intent to Deliver, and two counts of Simple Possession. A jury trial was held before this Court on August 4-5, 2015, and the jury found Defendant guilty on all counts. On August 12, 2015, Defendant was

---

[1] In May 2015, Officer O'Barto subpoenaed Deandra DiSilvestro for court, but she failed to appear. (Trial Tr. Day 1, 83). The officer then made several attempts to locate her but was not able to find her. *Id.* The Defendant claimed he never had a relationship with DiSilvestro and that he only stayed with her at Fort Mason Village a couple of times. *Id.* at 90. He further testified they smoked weed together and the last time he saw her was on June 22, 2014 when he got arrested. *Id.* at 95-96.

5

sentenced to an aggregate prison term of not less than four (4) years nor more than eight (8) years. Counsel made no post-sentence motions and filed this timely appeal.

## DISCUSSION

### *Corpus Delicti*

As his first issue, the Defendant argues the Court erred in allowing the Commonwealth to introduce Defendant's incriminating statements into evidence without evidence of ownership over the controlled substances and the firearm, a violation of *corpus delicti*. In Pennsylvania, the *corpus delicti* rule holds that extrajudicial statements of the accused may not come into evidence unless corroborated by independent evidence that the crime actually occurred. *Commonwealth v. Fears*, 836 A.2d 52, 67 (Pa. 2003). The "crucial determination" in a *corpus delicti* analysis is whether, at the close of the case, proof of the *corpus delicti* "was sufficient to permit the fact finder to consider defendant's admission or confession." *Commonwealth v. Persichini*, 663 A.2d 699, 702 (Pa. Super. 1995), *aff'd*, 737 A.2d 1208 (Pa. 1999).

Prior to the introduction of an extrajudicial admission into evidence, the Commonwealth is not required to prove the existence of the crime beyond a reasonable doubt. *Commonwealth v. Edwards*, 555 A.2d 818, 823 (Pa. 1989). Rather, it is enough for the Commonwealth to prove beyond a reasonable doubt that any injury or loss is consistent with the accused having committed the crime. *Commonwealth v. Hogans*, 584 A.2d 347, 350 (Pa. Super. 1990). An extrajudicial admission of the accused cannot be admitted until the *corpus delicti* has first been shown by independent proof, but it is not necessary for the Commonwealth to first establish all elements of each charge,

6

since the *corpus delicti* is not synonymous with the whole of the charge. *Persichini*, 663 A.2d at 703.

The Defendant's argument fails because the Commonwealth did prove the *corpus delicti* in this case, enabling the prosecution to then introduce Defendant's admissions into evidence. The independent evidence presented by the Commonwealth included testimony from the two police officers who investigated these crimes. First, both officers testified that a search of the Jeep returned a Ruger nine millimeter and a magazine clip, found under the front passenger seat. The Defendant was seated in the passenger seat when Officer O'Barto pulled the Jeep over. In addition, loose nine millimeter ammunition was found in the passenger door, again within close proximity to where the Defendant had been seated in the Jeep.

Officer Alexis Metros next testified that she personally observed Deandra DiSilvestro remove the baggies of cocaine and marijuana from her vagina when Officer Metros searched DiSilvestro at the police station. The officers had already testified that DiSilvestro was the driver of the vehicle in which Defendant was also a passenger. The Defendant was seated in the front of the vehicle next to DiSilvestro when the officers effectuated the stop. While there is no evidence of the Defendant's actual possession of firearms or contraband, the Commonwealth may present circumstantial evidence in proving its case. *See Commonwealth v. Bentley*, 419 A.2d 85, 87 (Pa. Super. 1980) (holding possession may be shown by circumstantial evidence and the totality of the circumstances shown by the Commonwealth's case is sufficient to infer possession). Thus, in light of the evidence, the Court is convinced that the Commonwealth established the *corpus delicti* and that there was testimonial evidence consistent with

7

the occurrence of the charged possession crimes. Accordingly, the Commonwealth could properly present to the jury the Defendant's admissions of ownership over the gun and the controlled substances.

### Sufficiency of the Evidence

Next, the Defendant claims the Commonwealth failed to prove beyond a reasonable doubt that he possessed a firearm or controlled substances. The Defendant frames his argument as a sufficiency of the evidence issue. On appeal, the standard applied for a determination of the sufficiency of the evidence is as follows:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Snyder*, 870 A.2d 336, 350 (Pa. Super. 2005).

As the Court has already pointed out, there is no direct evidence of Defendant actually possessing contraband or firearms. The Commonwealth did, however, prove its case of constructive possession circumstantially. The Superior Court has defined constructive possession as such:

8

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." (citation omitted). We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." (citation omitted). To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (citing *Commonwealth v. Thompson*, 779 A.2d 1195, 1199 (Pa. Super. 2001)).

In other words, in order to establish that the accused had constructive possession over a prohibited item, the Commonwealth must prove that the defendant had both an ability to exercise conscious control over the item as well as the intent to exercise control of it. *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013), *reargument denied* (May 2, 2013), *appeal denied*, 77 A.3d 636 (Pa. 2013). The intent to maintain conscious control may be inferred from the totality of the circumstances, and the Commonwealth may use circumstantial evidence to prove possession of contraband. *Id.*

In this case, police found the Ruger nine millimeter directly underneath the passenger seat in the Jeep. The Defendant was sitting in the passenger seat when the officers pulled the vehicle over. As the officers began to search the Jeep, the Defendant became extremely agitated and was kicking the doors and windows from inside Officer O'Barto's patrol car, arguably exhibiting some consciousness of guilt over what the officers would discover during the vehicle search. Given that the Jeep was registered to Deandra DiSilvestro, and that both Defendant and DiSilvestro were in the car together when the nine millimeter was found, the evidence presented the possibility that DiSilvestro, and not the Defendant, may have possessed the gun. However, the

9

Defendant willfully admitted that all items found by police, including the Ruger handgun, belonged to him and not to DiSilvestro. Furthermore, the fact that another individual may also have control and access to contraband does not eliminate the defendant's constructive possession; two actors may have joint control and equal access, and thus, both parties can constructively possess the contraband. *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996). Therefore, based on the evidence and the Defendant's admission, the Commonwealth did prove beyond a reasonable doubt that Defendant possessed the firearm in this case.

Likewise, the Commonwealth proved beyond a reasonable doubt that the Defendant possessed cocaine and marijuana. Even though the drugs were found in Deandra DiSilvestro's body cavity, the evidence was sufficient for the jury to infer constructive possession by the Defendant in this case. Similar to the firearm, the Defendant told the police he was the owner of the drugs found inside DiSilvestro. The other evidence presented at trial corroborates the Defendant's confession. First, the police apprehended the Defendant and DiSilvestro together in the same vehicle. The Defendant testified that two minutes passed before DiSilvestro exited the Jeep after the stop, giving the Defendant ample time to pass the drugs to DiSilvestro. Officer Metros testified that DiSilvestro was wearing black sweat pants on the incident date. Loose fitting clothing, such as sweat pants, would allow her to quickly and easily conceal the drugs before police ordered her out of the vehicle. During his testimony, the Defendant freely admitted that he had engaged in illegal drug activity with DiSilvestro by smoking marijuana with her. This statement is verified by the fact that Officer Metros found several burnt marijuana blunts in DiSilvestro's apartment.

10

As already alluded to, the evidence recovered from DiSilvestro's apartment also substantiates Defendant's constructive possession of the cocaine and marijuana. In the apartment, Officer Metros found a shotgun, two scales, and sandwich baggies. Officer O'Barto testified that the scales and baggies were most likely used to weigh and package drugs. In the officer's opinion, the evidence, taken as a whole, indicated the cocaine found on DiSilvestro was meant for street sale. Officer Metros found the Defendant's identification card in the same apartment where she also retrieved items identified by Officer O'Barto as used for the sale of controlled substances. DiSilvestro leased the apartment but the Defendant admitted to staying there on occasion. Officer O'Barto attested that the firearms found by police are indicative of drug dealers looking to "protect their investments or their person." (Trial Tr. Day 1, 73).

Additionally, the Defendant bragged about the value of his clothing but was at the same time unemployed, which demonstrates he had other means of income. Defendant was also found with $316.00 in cash on him, even though he claimed to be unemployed. Of significance again is that the Defendant confessed to possession of the cocaine and marijuana. Even taking Defendant's confession into account, requiring the Commonwealth to prove corroboration under *corpus delicti*, the Commonwealth still sufficiently established through circumstantial evidence that Defendant constructively possessed the cocaine and marijuana by showing, *inter alia*, Defendant was within close proximity to DiSilvestro when stopped by police, he had an opportunity to pass the drugs to her before the arrest, and, at the time of his arrest, he was staying at DiSilvestro's apartment where police discovered materials used to weigh and package narcotics for street sale. *Cf. Commonwealth v. Rickabaugh*, 706 A.2d 826, 843-44 (Pa.

11

Super. 1997) (holding even with confession and applicability of *corpus delicti*, prosecution presented sufficient circumstantial evidence of possession by proving appellant employed people to travel to another state to purchase cocaine and then transported drugs back to prepare and package for retail sale). This evidence is sufficient for the jury to find Defendant possessed cocaine and marijuana, and thus, his argument fails on this issue.

### Admissibility of DiSilvestro Apartment Evidence

Finally, the Defendant maintains that the Court erred in permitting the Commonwealth to introduce the evidence recovered from DiSilvestro's apartment without her trial testimony confirming that she consented to the search. The Defendant's argument must fail for two reasons: 1) this argument is waived as a suppression issue; and 2) even if argued as a pre-trial suppression issue, the officers' statements of DiSilvestro's consent to search acts as admissible hearsay.

First, the Defendant did not file any pre-trial motions. Pursuant to Pa.R.Crim.P. 581(B), a suppression motion must be timely filed or any suppression issues shall be deemed waived. Timeliness in this regard means within thirty (30) days after arraignment. Pa.R.Crim.P. 579(A). At trial, defense counsel agreed this is a suppression issue and stated, "I didn't have the opportunity [to file pre-trial motions]." (Trial Tr. Day 1, 34).

Second, Ms. DiSilvestro does not need to appear at trial to testify that she consented to a search of her apartment because the officers can properly testify that she gave consent, an exception to the hearsay rule. "It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible

12

on the basis that they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." *Commonwealth v. Jones*, 658 A.2d 746, 751 (Pa. 1995). The trial court, in retaining discretion over admission of such statements, should balance the prosecution's need for the statements against any prejudice arising from the admission. *Id.*

In the case *sub judice*, the admission of DiSilvestro's consent to search provided the jury with nothing more than an illustration of the whole police investigation. The defense's argument at trial was that all the drug and firearms evidence against the Defendant was found on Deandra DiSilvestro's person, in her car, or in her apartment. The Commonwealth's case therefore depended upon demonstrating to the jury that the Defendant did, in fact, possess these items as well. As noted at trial, the Court overruled the defense's objection to the Commonwealth referencing the search of DiSilvestro's apartment because the Commonwealth proffered there was evidence recovered indicating joint ownership in the apartment. (Trial Tr. Day 1, 34). The police did find evidence of joint ownership in the residence, the Defendant's identification card located in the apartment's bedroom. Officer Metros testified to this fact at trial. Moreover, the Defendant acknowledged at trial he had been at the apartment on more than one occasion. Although he claims he did not ever reside there, for some reason he left his ID behind in the bedroom.

In cases where the third-party declarant does not testify, a concern exists that by allowing the police to testify regarding a declarant's statement, the jury might take the statement as substantive evidence of guilt without allowing the accused to cross-examine the declarant. *Commonwealth v. Yates*, 613 A.2d 542, 543 (Pa. 1992). There

13

is no such concern here, as DiSilvestro made no affirmative or even slightly suggestive statements to police regarding the Defendant's culpability. Rather, she merely gave her permission to search the apartment, an apartment she had possession of as the lessee. Neither the United States Supreme Court nor the Pennsylvania Supreme Court prohibits a warrantless search of a residence if consent is given by a person possessing the authority to consent to a search. *Commonwealth v. O'Donnell*, 740 A.2d 198, 206 (Pa. 1999) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). Because the police found Defendant's identification card at the apartment, which indicates some joint ownership and possessory interest in the premises, the evidence recovered in the search was properly admitted against the Defendant. Additionally, Ms. DiSilvestro did not need to testify at trial for her consent to search to be admissible, as the officers could rightly testify to her consent as an exception to the hearsay rule. Therefore, Defendant's argument of error here is without merit.

## CONCLUSION

For the aforementioned reasons, the Court finds the Defendant has advanced no cognizable arguments on appeal. Therefore, the Court affirms its trial rulings and Defendant's judgment of sentence.

FILED
2015 SEP 28 PM 2: 4
JANICE SNYDER
FAYETTE COUNTY
CLERK OF COURTS

ATTEST:

CLERK OF COURTS

BY THE COURT:

STEVE P. LESKINEN, JUDGE

9-29-15 1:30
DIST/DATE
DEF_____
DA_____ I
PO_____ I
PD_____ I
WARD____ I
SHER_____ I
CA_____ I
ATTY_____
CC_____
BKG.CTR_____
PR.SLV.CRT._____
FAY. CO. BAR-R

14