**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John HARVARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 11, 2013.

Filed March 25, 2013.

Reargument Denied May 2, 2013.

Suzanne M. Swan, Public Defender and Carrie L. Allman, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Rebecca Good McBride, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: DONOHUE, MUNDY and PLATT *, JJ.

* Retired Senior Judge assigned to the Superior Court.

OPINION BY DONOHUE, J.:

Appellant, John Harvard ("Harvard"), appeals from the trial court's December 8, 2010 judgment of sentence imposing an aggregate 65 to 280 years of incarceration for convictions resulting from a series of armed robberies. We affirm.

The Commonwealth charged Harvard with multiple counts of robbery (18 Pa. C.S.A. § 3701(a)(i) and(ii)), burglary (18 Pa.C.S.A. § 3502), conspiracy 18 Pa.C.S.A. § 903, receiving stolen property (18 Pa. C.S.A. § 3925), persons not to possess a firearm (18 Pa.C.S.A. § 6105(a)), and related offenses based on a series of armed robberies that took place from June 16, 2008 through July 29, 2008. On September 13, 2010, a jury found Harvard guilty of the robberies and related offenses. The trial court found Harvard guilty of multiple counts of persons not to possess a firearm. Subsequent to the conviction, the Commonwealth filed notice of its intent to seek a 25–year mandatory minimum sentence for several counts of robbery based on Harvard's status as a third strike offender.[1] The trial court imposed the aforementioned sentence on December 8, 2010. Harvard filed a timely post sentence motion on December 17, 2010 challenging, among other things, the discretionary aspects of his sentence and the weight of the evidence in support of his convictions. The trial court conducted a hearing on Harvard's post-sentence motion on March 22, 2011 and denied the motion on April 21, 2011.

Harvard filed this timely appeal on May 18, 2011. He raises seven issues for our review:

I. Was an unlawful search conducted when police used a key fob to manipulate the locking mechanism of a motor vehicle and does that impermissible search taint the affidavit of probable cause as an illegal search was performed to justify the facts in support of the warrant?

II. Does the affidavit [of probable cause] fail on its face as it lacks any indication of what 'investigative techniques' were used to link [Harvard] to the home?

III. Was evidence unlawfully seized where items were seized that were not listed in the warrant and where consent was not voluntarily given?

IV. Was the evidence insufficient to sustain a conviction for possession of the firearm found in the shed of a residence [Harvard] shared with others, and can the conviction stand where no finding of guilt was made on the record?

V. Was the verdict rendered contrary to the weight of the evidence?

VI. Is the sentence imposed an abuse of discretion where it fails to consider [Harvard's] rehabilitative needs, imposes a *de facto* life sentence, does not consider the nature and characteristics of [Harvard], and where the sentence imposed does not comport with the plain language of 42 Pa.C.S.A. § 9714(a)(1)?

VII. Did the court err in allowing a witness to testify to an out of court identification that was made under unduly suggestive circumstances?

Harvard's Brief at 8–9.

In his first three arguments, Harvard challenges the trial court's denial of his pre-trial motion to suppress evidence. We conduct our review as follows:

---

1. *See* 42 Pa.C.S.A. § 9714(a)(2).

Generally, our standard of review when addressing a challenge to a trial court's denial of suppression is whether the factual findings are supported by the record and whether the legal conclusions drawn from these facts are correct. When reviewing the rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Hawkins,* 45 A.3d 1123, 1126 (Pa.Super.2012), *appeal denied,* —— Pa. ——, 53 A.3d 756 (2012).

■ Harvard's first argument concerns an investigating officer's use of a key fob to activate the lights and locking mechanism of a parked vehicle. The transcript from the suppression hearing reveals that Pittsburgh Police Officer Paul Kirby ("Officer Kirby") learned from the victims of one of the robberies that their stolen debit card was used at a local Wal–Mart and convenience store. N.T., 8/23/10, at 23. James Hodder ("Hodder"), a loss prevention employee at the Wal–Mart, provided Officer Kirby with a printed record and video surveillance of the attempted debit card transaction. *Id.* at 23–24. When the man from the surveillance video—later identified as Harvard—returned to the Wal–Mart several days later, Hodder followed him and noted the license plate number of the green Toyota sedan in which Harvard drove away. *Id.* at 25–26. Hodder provided the license plate number to Officer Kirby, and Officer Kirby learned that the vehicle was registered to a Monica Jackson ("Jackson"), living at 125 Bonvue Street in Pittsburgh's North Side. *Id.* at

26–27. Officer Kirby contacted an inspector from the United States Post Office and learned that Harvard also received mail at that address. *Id.* at 27. Officer Kirby compared the surveillance footage to Harvard's driver's license photo and concluded that Harvard was the person in the surveillance photo. *Id.* at 28–29.

Shortly thereafter, the victims of a home invasion robbery discovered a Toyota key fob at their home and provided it to Officer Kirby. *Id.* at 27. Officer Kirby drove to the home at 125 Bonvue Street, observed a green Toyota sedan parked outside, and pressed the lock button on the key fob. *Id.* Upon Officer Kirby's use of the key fob, the Toyota's lights flashed. *Id.* Based on all of the foregoing information, Officer Kirby obtained a warrant to search the residence at 125 Bonvue Street and a warrant for Harvard's arrest.

■ Harvard argues that Officer Kirby's use of the key fob constituted an illegal warrantless search, in violation of the Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution. Harvard argues, therefore, that the search warrant was invalid because it was based upon information gleaned from an illegal act. The parties dispute whether Harvard has standing to challenge this alleged search of the Toyota. The target of a search has standing to challenge the propriety of a search if, among other things, he has a "proprietary or possessory interest in the searched premises." *Commonwealth v. Hawkins,* 553 Pa. 76, 80, 718 A.2d 265, 267 (1998).

The parties devote much of their argument to whether Harvard can establish a possessory interest in Jackson's vehicle. We believe that Harvard's possessory interest, or lack thereof, is immaterial in this case as the record fails to reflect that Officer Kirby's use of the key fob consti-

tuted a search. Harvard relies on *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), in which police officers, while searching an apartment for weapons and victims after a shooting, noticed an expensive stereo system. Police believed the stereo looked out of place in the "squalid" and "ill-appointed" apartment, so they moved the components of the stereo in order to find and record serial numbers. *Id.* at 323, 107 S.Ct. 1149. The defendant conceded that the police were lawfully present in the apartment based on the exigent circumstances brought about by the shooting. He argued, however, that moving the stereo equipment to observe concealed serial numbers constituted an improper search not justified by the exigency. *Id.* at 324, 107 S.Ct. 1149. The Supreme Court agreed. *Id.* at 324–25, 107 S.Ct. 1149. Absent probable cause to believe the stereo was stolen—which police concededly did not have—the search violated the defendant's Fourth Amendment rights. *Id.* at 326–27, 107 S.Ct. 1149.

Harvard's case bears some similarity to *Hicks*, in that Officer Kirby made his observations from a lawful vantage point—the street—but additional action was required before he gleaned additional evidence. *Hicks* is distinguishable, however, because Officer Kirby was able to observe the vehicle's flashing lights in plain view from his lawful vantage point, whereas the police in *Hicks* had to move the stereo to observe concealed portions of it. We do not believe Officer Kirby's use of a key fob aligns the instant case with *Hicks*, as Officer Kirby did not violate any privacy interest of Harvard's in coming into possession of the key fob. As explained above, the victims of a home invasion found the key fob in their home after the robbery. Officer Kirby did not use the key fob to gain entry to any concealed portion of the vehicle, such as the interior or the trunk. The key fob simply enabled Officer Kirby to make additional plain view observations from his lawful vantage point.

Furthermore, we believe that Officer Kirby's use of the key fob was immaterial to his ability to obtain the warrant for 125 Bonvue. Officer Kirby identified Harvard from surveillance video and from his driver's license photo. Harvard became a suspect in the home invasion by using the victim's ATM card shortly after the robbery occurred. Officer Kirby confirmed Harvard's connection to 125 Bonvue through the post office, and he confirmed Harvard's connection to the vehicle through Hodder's observations of Harvard using the vehicle. Officer Kirby's use of the key fob to activate the vehicle's lights provided additional evidence linking Harvard to the home invasion, but it was superfluous for purposes of obtaining the warrant for 125 Bonvue. Thus, even were we to accept Harvard's argument that Officer Kirby's use of the key fob constituted an illegal search, Harvard could not obtain relief. *See Commonwealth v. Hernandez*, 594 Pa. 319, 334, 935 A.2d 1275, 1283 (2007) ("The law is clear that where some evidence contained in a search warrant affidavit is unlawfully obtained, we must consider whether the affidavit nonetheless sets forth probable cause in the absence of such evidence."). Harvard's first argument lacks merit.

 Next, Harvard asserts that the affidavit of probable cause in support of the search warrant for 125 Bonvue was deficient in that it failed to divulge the "investigative techniques" used in linking Harvard to that address. "A magistrate's finding of probable cause must be based on facts described within the four corners of the affidavit[,] and our scope of review of a suppression court's ruling is confined primarily to questions of law." *Common-*

*wealth v. Smith,* 784 A.2d 182, 185 (Pa.Super.2001) (citations omitted). "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Hernandez,* 594 Pa. at 335, 935 A.2d at 1284.

[T]he task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Thus, the totality of the circumstances test permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

*Commonwealth v. Torres,* 564 Pa. 86, 96–97, 764 A.2d 532, 537–38 (2001).

Virtually all of the facts set forth above were included in the affidavit of probable cause.[2] Specifically, the affidavit states, "[a]n investigation into the occupancy and who is receiving mail at 125 Bonvue Street Pgh, Pa 15214, revealed that one of the occupants is [Harvard]." Commonwealth's Brief at 22; Harvard's Brief at 37. Harvard argues that the affidavit is deficient because Officer Kirby failed to specify the investigative technique he employed to learn that Harvard receives mail at 125 Bonvue. Officer Kirby testified during the suppression hearing that he contacted a postal inspector, but that information was absent from the affidavit. Harvard argues, therefore, that "the police got the name John Harvard through some investigatory tactic that was so secret that they chose not to inform the magistrate what it was." Harvard's Brief at 39.

Reviewing courts are required to afford deference to an issuing authority and exercise common sense in reviewing the authority's probable cause determination. In our view, common sense dictates that a police officer would contact the post office to determine which persons receive mail at a given address. On the other hand, we discern no common sense in concluding that Officer Kirby used a shadowy investigatory tactic too secret to share with a magistrate. The affidavit's failure to detail Officer Kirby's contact with a postal inspector does not undermine the magistrate's probable cause finding. Harvard's second argument fails.

▆▆▆▆ For his third argument, Harvard asserts that the trial court should have granted his motion to suppress seized items that were outside the scope of the warrant. During their search of 125 Bonvue, police seized jewelry, purses, cell phones, a driver's license, and a loaded firearm and ammunition. The Commonwealth concedes that none of these items were listed in the warrant. Commonwealth's Brief at 26. The Commonwealth

---

**2.** We were unable to locate the affidavit of probable cause in the certified record, but the Commonwealth quotes the affidavit verbatim in its brief and Harvard quotes it in relevant part. Commonwealth's Brief at 20–23; Harvard's Brief at 37. The affidavit's absence from the record, which may be a simple ministerial error, does not hamper our review.

argues, however, that their seizure was justified by the plain view doctrine.

Generally, a warrant stating probable cause is required before a police officer may search for or seize evidence. However, [t]he plain view doctrine provides that evidence in plain view of the police can be seized without a warrant[.] The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

*Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super.2012) (citations omitted), appeal denied, —— Pa. ——, 51 A.3d 837 (2012). Thus, police executing a valid search warrant may seize items not listed in the warrant if their incriminating nature is immediately apparent. *Id.*

Officer Kirby testified that the purses matched descriptions of purses stolen during the robberies under investigation. N.T., 8/23/10, at 32, 49. Likewise, police found a bowl of jewelry on a counter including a bracelet with the word "meaty" inscribed on it. *Id.* at 32. One of the robbery victims reported losing a bracelet with the word "meaty" inscribed on it. *Id.* The seven seized cell phones were found in a bag with two identification cards, rendering them suspicious. *Id.* at 32, 49. The gun was sitting on some boxes in the basement. *Id.* at 32–33.

Police summoned Jackson, the homeowner, to the scene and showed her the jewelry and the weapon. *Id.* at 33. Jackson claimed one ring as hers and said that she had never seen the rest of the jewelry and that she did not own a firearm. *Id.* Jackson signed a form consenting to the seizure of the items that were not listed in the search warrant. *Id.* at 34.

Both parties cite *Commonwealth v. Doria*, 393 Pa.Super. 363, 574 A.2d 653 (1990)(*en banc*) in support of their argument. In *Doria*, police executing a search warrant noticed items not listed in the warrant that they believed to be stolen in a recent robbery. *Id.* at 655. The police placed phone calls to the owners of the stolen items and confirmed that the items matched the owners' descriptions. *Id.* Police then seized the items without a warrant. *Id.* This Court concluded that the police did not violate the defendant's federal or state constitutional rights, and that the incriminating nature of the seized items was immediately apparent to the police officers, given their knowledge of items reported missing from recent robberies. *Id.* at 656.

Harvard argues that *Doria* is distinguishable because Officer Kirby and his fellow officers did not "happen upon evidence from a different robbery," but rather "found the same evidence they wanted, but chose not to describe in the warrant for some unknown reason." Harvard's Brief at 44. We believe this to be a distinction without a difference. The key point in *Doria* was that the police recognized items as fitting the description of items stolen during a spate of recent robberies. The same is true in the instant matter. Harvard does not challenge the trial court's finding that the incriminating nature of the seized items was immediately apparent and that police had a lawful right of access. Rather, Harvard argues that denial of his suppression motion was tantamount to "rewarding sloppy police work" because the warrant failed to describe items known to be stolen. Harvard's Brief at 45. Since Harvard's argument does not afford any basis for overturning the trial court's finding that the police properly

seized stolen items pursuant to the plain view doctrine, we will not disturb the trial court's order.[3]

■ Harvard next asserts that the Commonwealth failed to produce sufficient evidence of his constructive possession of the weapon seized from 125 Bonvue. Harvard also argues that we should vacate his conviction for persons not to possess a firearm because the trial court failed to make a finding of guilt on the record.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Norley*, 55 A.3d 526, 531 (Pa.Super.2012) (citations omitted).

■ "In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." *Commonwealth v. Gutierrez*, 969 A.2d 584, 590 (Pa.Super.2009). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Id.*

In *Gutierrez*, the police found an illegal sawed off shotgun and various drug paraphernalia during their search of a home. *Id.* at 590–91. The defendant received mail at the home where the gun was found, had keys to the residence, and allowed the police to enter. This Court concluded that sufficient evidence established his ability and intent to control the shotgun in connection with his illegal drug activity. *Id.* at 591.

Similarly, Harvard received mail at 125 Bonvue, and the record establishes that he had been residing there for several months. In addition to the firearm, police found numerous items reported stolen during armed robberies. Jackson, the other resident in the house, testified that she did not own a gun and that she was unaware that the gun was present in the house. Under these circumstances, the trial court,

---

**3.** Based on our resolution of this issue, we need not assess the voluntariness of Jackson's consent.

sitting as finder of fact, could reasonably infer that Harvard had the ability and intent to control the firearm in connection with armed robberies. Thus, we reject Harvard's challenge to the sufficiency of the evidence.

■ Harvard also argues that the trial court failed to make a finding of guilt on the record in connection with his conviction for unlawful possession of a firearm at docket number CP–02–CR–0013557–2008. The trial court imposed a sentence of five to ten years of incarceration for that offense, and Harvard argues that the sentence is illegal given the lack of an on-the-record finding of guilt.[4]

The Commonwealth acknowledges that no finding of guilt appears in the transcript. Nonetheless, the certified docket at that number clearly reflects the finding of guilt. This Court has held that a trial court sitting as fact finder need not read its verdict in open court. *Commonwealth v. Hembree*, 751 A.2d 202, 203 (Pa.Super.2000) ("Neither the Pennsylvania Constitution, nor the United States Constitution, guarantee a criminal defendant the right to receive criminal verdicts in open court[.]"). As noted above, the parties agreed to a non-jury trial for the unlawful possession of firearms charges. In *Hembree*, the trial court provided the defendant with a written verdict through the mail. This Court concluded that the mailed verdict sufficiently complied with Pa. R.Crim.P. 1122 (current Rule 622).[5] That Rule provides only that "[a] verdict shall be rendered in all non-jury cases within 7 days after trial." Pa.R.Crim.P. 622(A).

Since Harvard cites no law in support of his argument that the absence of an open court verdict rendered his sentence illegal,

and since existing precedent holds the contrary, Harvard's argument lacks merit.

■ Next, Harvard challenges the weight of the evidence in support of his conviction.

A challenge to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Fisher*, 47 A.3d 155, 158 (Pa.Super.2012) (citations omitted), appeal denied, —— Pa. ——, 62 A.3d 378 (2013).

Harvard bases his argument on varying descriptions of the assailant's height and weight provided by the victims, as well as varying descriptions of the firearm the assailant used during the robbery. Harvard notes that none of the victims described the .38 caliber revolver that police found at 125 Bonvue. Jackson and her

---

4. The trial court entered findings of guilt for persons not to possess a firearm at two other docket numbers.

5. The pertinent language has not changed.

daughter provided alibi testimony for Harvard for some of the robberies. Harvard's Brief at 50–51. Harvard also argues that he testified "credibly that he merely received the stolen property but had not participated in any home invasions or robberies." *Id.* at 52. Harvard argues that the body of evidence is more consistent with his testimony than with the verdicts convicting him of robbery.

As set forth above, we need only review the trial court's exercise of discretion in determining that the jury's failure to assess greater weight to certain facts constitutes a denial of justice. The jury heard evidence that the key fob from a Toyota that Harvard used was located at the scene of a home invasion. Surveillance footage captured Harvard attempting to use a debit card stolen from one of the victims. Items reported stolen during the various robberies were recovered at Harvard's place of residence. The trial court declined to find that variances in the victims' descriptions of Harvard, Harvard's own testimony, and Jackson's alibi testimony, were of sufficient weight to render the guilty verdict a denial of justice. Based on the record as summarized above, we believe the trial court acted within its discretion in denying Harvard's request for a new trial based on weight of the evidence. Harvard's fifth argument fails.

 For his sixth argument, Harvard asserts that the trial court abused its sentencing discretion. Harvard argues that a *de facto* life sentence of 65 to 280 years of incarceration is manifestly excessive.[6] Harvard included this challenge in a timely post-sentence motion. In order to preserve a challenge to the trial court's exercise of its sentencing discretion, an appellant's brief must include a concise statement pursuant to Pa.R.A.P. 2119(f)

setting forth reasons why the challenge raises a substantial question. *Fisher,* 47 A.3d at 159.

A substantial question requires a demonstration that the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. This Court's inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits. Whether a substantial question has been raised is determined on a case-by-case basis; the fact that a sentence is within the statutory limits does not mean a substantial question cannot be raised. However, a bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim.

*Id.* (citations omitted).

In his Pa.R.A.P. 2119(f) statement, Harvard asserts that the trial court acted out of ill will, focused solely on the seriousness of Harvard's offenses, and failed to take account of Harvard's rehabilitative needs. Harvard's Brief at 55–56. The Commonwealth concedes that Harvard has raised a substantial question. Commonwealth's Brief at 42–44.

The following standard governs our review of the merits of a challenge to the trial court's sentencing discretion:

Our Court has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses

---

**6.** Harvard was 35 years old at the time of sentencing. N.T., 12/8/10, at 2.

that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

*Commonwealth v. Walls*, 592 Pa. 557, 564–565, 926 A.2d 957, 961–62 (2007). Pursuant to 42 Pa.C.S.A. § 9721(b), the trial court must consider the protection of the public, the gravity of the offense, and the defendant's rehabilitative needs. 42 Pa.C.S.A. § 9721(b).

In conducting appellate review, this Court must consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Harvard's sentenced is comprised of two consecutive 25 to 125 year sentences for robbery, with the 25 year minimum representing the mandatory minimum applicable to a third strike offender. In addition, the trial court imposed three consecutive five to ten year sentences for robbery, burglary, and unlawful possession of a firearm, resulting in a 65–year minimum sentence. On numerous other counts of robbery, burglary, and related offenses, the trial court issued a determination of guilt without further punishment.

Concerning the merits of this issue, Harvard argues that the trial court failed to consider that Harvard was engaged to be married and has a young son and was gainfully employed at Eat n' Park. Harvard also argues that the trial court focused on the seriousness of Harvard's offenses rather than his rehabilitative needs. Oddly, given that his minimum term of incarceration amounts to a life sentence, Harvard also argues that the trial court abused its discretion in imposing a maximum sentence that is more than twice the minimum. Finally, Harvard argues that a life sentence is inappropriate for a non-homicide offense. Harvard's Brief at 57–59.

The trial court was cognizant that Harvard employed a deadly weapon during the robberies at issue—including several instances in which he pointed his gun at the victim's head while stealing her purse, leaving her traumatized. N.T., 12/8/10, at 13. Harvard has a consistent history of brandishing a deadly weapon during his

various offenses. *Id.* Harvard's past offenses included firing a gun at a woman and her three children and pistol whipping one of his robbery victims. *Id.* at 10–11. Harvard addressed the trial court at his sentencing proceeding and refused to take responsibility for any of the robberies presently at issue. *Id.* at 12. Given the threat Harvard poses to the community and his lack of remorse, the trial court chose to run several of Harvard's mandatory minimum sentences consecutively. *Id.* at 12–14.

We observe that 42 Pa.C.S.A. § 9714(a)(2), governing mandatory minimum sentences for third strike offenders, provides as follows:

> (2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. **Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.**

42 Pa.C.S.A. § 9714(a)(2) (emphasis added).

■■■ In § 9714(a)(2), our legislature has entrusted trial court judges with discretion to determine whether repeat violent offenders such as Harvard should be allowed to rejoin society. In light of the bolded portion, of § 9714(a)(2), we reject Harvard's argument that the trial court lacks discretion to impose a life sentence in a non-homicide case. The trial court effectively imposed a life sentence in this case, albeit by imposing consecutive sentences rather than imposing a life sentence for one of the robberies. This distinction is of no moment, as imposition of consecutive rather than concurrent sentences rests within the trial court's discretion. *See Commonwealth v. Ahmad,* 961 A.2d 884, 886 n. 7 (Pa.Super.2008). The record reveals that the trial court was cognizant of all statutorily prescribed considerations. We cannot conclude that the trial court abused its discretion in imposing its sentence in this case.

■■■ For his final argument, Harvard asserts that the trial court erred in permitting a witness to identify him based on her observation of him at a preliminary hearing. Harvard argues that his preliminary hearing is an unduly suggestive environment, given that the witness only saw one person as opposed to a photo array or line up. Harvard also argues that the identification was unfair in that he had technically waived the preliminary hearing and therefore had no opportunity to cross-examine the witness during the preliminary hearing. Harvard's Brief at 60.

The record reveals that Bernita Dolby ("Dolby")—who was robbed at gunpoint during an invasion of her apartment—testified at trial that when she attended the preliminary hearing, she recognized Harvard's deep voice as the voice of one of the perpetrators. N.T., 9/8–13/10, at 58. The record reflects the following exchange:

> Q. Subsequently, did you attend the preliminary hearing for [Harvard] at City Court in September of 2008?
>
> A. Yes.
>
> Q. Did you notice anything about [Harvard] at that time, anything distinctive?

A. Not that I can remember right now. I'm trying to remember.

Q. Anything about his voice?

A. His voice—

[Defense Counsel]: Objection, Your Honor. That question has been asked and answered that she didn't remember anything distinctive.

[Prosecutor]: I asked her specifically if she remembered anything about his voice, Your Honor.

The Court: Overruled.

A. His voice is pretty deep. That is what I remembered from the robbery, that his voice was real deep.

Q. Do you remember if he was a taller individual or a shorter individual?

A. Shorter.

*Id.* at 58–59. At that point, the prosecutor ended his direct examination and defense counsel's cross examination began. Defense counsel lodged no objection other than the "asked and answered" objection set forth above. Defense counsel did not object to the prosecutor's elicitation of Dolby's observations at the preliminary hearing. We conclude, therefore, that Harvard has waived his final argument because he failed to preserve it at trial. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In summary, we have concluded that six of Harvard's arguments lack merit and that he has waived the seventh. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

MUNDY, J. concurs in the result.