J-S03026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ERIC CRUZ | |
| Appellant | No. 1127 EDA 2015 |

Appeal from the Judgment of Sentence January 7, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003627-2012

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                         **FILED APRIL 11, 2016**

Eric Cruz appeals from the judgment of sentence imposed on January 7, 2015, in the Court of Common Pleas of Chester County.  A jury found Cruz guilty of aggravated assault, simple assault, recklessly endangering another person, and possessing an instrument of a crime.[1]  In a related severed non-jury trial, the trial court found Cruz guilty of persons not to possess a firearm.[2]  Cruz received an aggregate sentence of 15 to 30 years' incarceration.  In this timely appeal, Cruz claims the trial court erred in allowing Detectives Louis DeShullo and John O'Hare offer their lay opinion identifying Cruz as the assailant from a video surveillance recording.

_____

[1] 18 Pa.C.S. §§ 2702(a), 2701(a), 2705, and 907(a), respectively.

[2] 18 Pa.C.S. § 6105(a)(1).

Additionally, Cruz claims the trial court erred in allowing Detectives DeShullo and O'Hare to testify they recognized Cruz from the community, which testimony functionally forced Cruz to waive cross-examination of the witnesses. Following a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

This matter arises out of an incident that took place in the early morning hours of September 1, 2012, outside of the Star Social Club, on Market Street, in West Chester, Pennsylvania. A fight broke out as people were leaving the club sometime after 3:00 a.m. During the course of that fight, the victim, Jareal Mills, was shot in the left forearm, thereby fracturing it. The break required an open reduction/internal fixation. The Star Social Club, described in testimony as an after-hours drinking establishment, had video surveillance inside. Federal drug enforcement agents had placed video surveillance on a nearby utility pole outside the club. This "pole camera" captured the fight and shooting from a distance of approximately 100 feet.

Detectives Louis DeShullo and John O'Hare both testified they knew Cruz from the community. Further, internal surveillance video taken from the Star Social Club revealed Cruz was in the club that night and that he left the club shortly before the shooting.[3] Based upon their personal knowledge of Cruz and the video of Cruz inside the club, they testified they could

---

[3] Cruz stipulated he was depicted in the inside video.

identify Cruz as the assailant in the outside surveillance video. Based upon this, the police put together a photo array, containing a photograph of Cruz. This photo array was then shown to Mills, who stated he could not identify his shooter from the lineup. A few days later, Mills returned to the police, telling them he could identify the shooter in the lineup, but had feared retaliation. He had told his mother about the incident and his mother had convinced him to return to the police. Mills looked at the photo lineup again and identified Cruz as the person who shot him. However, at trial, Mills disavowed his pre-trial identification of Cruz, claiming he had been drinking excessively on the night in question, had likely smoked marijuana, and taken Xanax pills as well.

Testimony by Detectives DeShullo and O'Hare identifying Cruz as the assailant not only served to explain the course of the investigation, specifically, how Cruz came to be charged with the crime, but was also substantive evidence. Cruz objected to the identification testimony claiming it impermissibly infringed upon the province of the jury and improperly suggested Cruz had a prior criminal history.

Our standard of review for the admission of evidence is oft stated:

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record.

*Commonwealth v. Flamer*, 53 A.3d 82, 86 (Pa. Super. 2012)(citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015); *see also* Pa.R.E. 402.

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401; *see also Tyson*, 119 at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact."). "The court may exclude relevant evidence if its probative value is outweighed by a danger of ... unfair prejudice...." Pa.R.E. 403; *see also Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012) (stating that even when evidence meets the relevance requirements, "such evidence may still be excluded where its probative value is outweighed by the danger of unfair prejudice.").

> However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case.... This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Kouma*, 53 A.3d at 770 (citation omitted); *see also* Pa.R.E. 403 cmt. (defining "unfair prejudice" as "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.").

*Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015).

Additionally, we note the dictates of Pa.R.E. 701, regarding opinion testimony of lay witnesses:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

- 4 -

(a) rationally based on the witness's perception;

(b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701 (a)-(c).

Our review of the certified record leads us to conclude the testimony of Detectives DeShullo and O'Hare meets the Rule 701 criteria. Both detectives were familiar with Cruz, and could identify him from the video surveillance evidence taken inside the club. As part of that interior identification, the detectives noted certain physical characteristics of Cruz, including his clothing, relative size, and fact that he was carrying something akin to a paper bag as he left the club, shortly before the altercation. The pole video depicted what was described as a melee outside the Star Social Club. Although the pole video was not sufficiently detailed to allow for facial recognition, both detectives testified based on the totality of their knowledge, they believed they could identify Cruz as the assailant. Accordingly, that testimony was rationally based upon both witnesses' perception; it helped explain the officers' course of action, as well as helping clarify the video of approximately one dozen people engaging in an altercation; and was not based upon any scientific, technical or specialized knowledge within the scope of Rule 702 (regarding expert testimony). In light of the above, Cruz is not entitled to relief on his claim that Detectives

DeShullo and O'Hare should not have been allowed to provide identity testimony based upon the video evidence. (*See, Commonwealth v. Harvard*, 64 A.3d 690, 695 (Pa. Super. 2013), "Officer Kirby compared the surveillance footage to Harvard's driver's license and concluded that Harvard was the person in the surveillance photo." This is virtually the same fact pattern as presented herein.)

Cruz also argues that the identification testimony improperly invaded the province of the jury, in that the jury should have been able to interpret the video evidence itself and the complained of testimony went to the ultimate issue to be determined - the identity of the assailant. This argument is unavailing. As noted above, the testimony fulfilled the relevant Rule 701 criteria in providing help to interpret what could have been a confusing video. Further, the Rules of Evidence regarding opinion evidence specifically allow for such opinion testimony embracing an ultimate issue, such as physical characteristics. *See* Pa.R.E. 704.

Additionally, we agree with the trial court's own cogent analysis regarding this aspect of Cruz's argument. The trial court noted, "As with any witness testimony, the jury was free to believe some, all, or none of [the complained of] testimony when making the ultimate determination of the shooter's identity." Trial Court Opinion, 7/20/2105, at 5.

Moreover,

> While it is unknown in any trial the extent to which a jury chooses to place reliance upon particular testimony during its deliberations, it is clear that the jury in this case chose to

carefully make its own independent determination of the identity of the shooter. Approximately one hour into deliberations, the jury requested to view the outside ("pole camera") video footage. When the jury was brought back into the courtroom for this purpose, the jurors requested to stand closer to the projector screen rather than sit in the jury box when the video was played, and they asked to watch the video several times. These accommodations were allowed by the court, and the jurors watched the video, first at slow-motion speed, and then again in real-time.

The very fact that the jury was so meticulous in reviewing the video during deliberations indicates that the jurors wanted to analyze its contents in sufficient detail to enable them to make their own judgment as to the identity of the shooter. Not only did the jurors desire to see the video during deliberations, they wanted to see it more than once, up close, and at varying speeds. Had the jury, in an unquestioning manner, simply taken the testimony of Detectives DeShullo and O'Hare at face value, there would have been no interest in examining the footage so closely. [Cruz's] claim that identification was taken out of the hands of the jury is rendered untenable by the jury's inquisitive conduct during deliberations, and [Cruz] is not entitled to relief on this claim.

*Id*. at 5-6.

Next, Cruz argues that the trial court erred in allowing Detectives DeShullo and O'Hare to testify they knew Cruz from the community. Cruz argues such a reference impermissibly suggested to the jury that Cruz had a criminal history. Cruz supports his argument by citing two cases from the Federal Sixth Circuit, one from the Federal Ninth Circuit, and one from Illinois. These cases may be informative, but they have no binding effect on us. Rather, we look to *Commonwealth v. Sanders*, 442 A.2d 817 (Pa. Super. 1982) which addresses the instant issue. In *Sanders*, a panel of our Court held that a police officer's testimony that he knew the defendant,

knew his nickname and knew several of the bars defendant frequented did not raise an inference that the defendant had been involved in prior criminal activity. Of particular relevance, **Sanders** stated:

> Merely because a police officer knows someone or knows where they may be found does not suggest that the person has been engaged in prior criminal activity. A policeman may know someone because they reside in the same neighborhood or for any other number of reasons. We refuse to hold that a policeman's statement to the effect that he knew someone, knew his nickname, or was familiar with the person's whereabouts raises an inference of prior criminal activity. Any such holding would defy all logic and good sense. Not everything a policeman says about a person constitutes an inference of prior criminal activity on the part of that person.

**Commonwealth v. Sanders**, 442 A.2d at 818 (citation omitted).

Here, the Detectives merely mentioned they knew Cruz from the community. As in **Sanders**, merely knowing Cruz from the community did not raise the specter of prior criminal activity.

Finally, Cruz complains that because Cruz did have a prior criminal history, allowing the Detectives to testify they knew him effectively prevented him from cross-examining the Detectives. The certified record belies this claim. Detective O'Hare was subjected to what was transcribed as 10 pages of cross-examination regarding his ability to identify Cruz in the "pole video." Detective O'Hare was questioned on such topics as lack of quality in the "pole video", lack of lighting, camera flare and the fact that Detective O'Hare could not base his identification of Cruz solely on the "pole video." Further, Cruz has not put forth any relevant question he could not

ask. Similarly, no ruling prevented Cruz from subjecting Detective DeShullo to the same manner of cross-examination.[4] Cruz was demonstrably not prevented from cross-examining the Detectives, nor does our review of Cruz's argument and the certified record reveal any prejudicial limitation on his ability to cross-examine the Detectives.

Based on the foregoing, Cruz is not entitled to relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/11/2016

---

[4] The notes of testimony from May 14, 2014 demonstrate that defense counsel began to cross-examine Detective DeShullo in the same manner as Detective O'Hare. However, counsel moved on to a different line of questioning. *See* N.T. Trial, 5/14/2014 at 189-193.