J-S06014-22 & J-S06015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD MARTIN | : | |
| | : | |
| Appellant | : | No. 1099 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 25, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0004520-2019,
CP-51-CR-0004521-2019.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD MARTIN | : | |
| | : | |
| Appellant | : | No. 1100 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 25, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0004520-2019,
CP-51-CR-0004521-2019.

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 26, 2022**

Edward Martin appeals from the judgment of sentence imposed following his bench trial and conviction of aggravated assault, strangulation, possession of an instrument of crime, simple assault, reckless endangerment,

and various drug possession offenses.[1]  Martin challenges the denial of his

pre-trial motion to suppress.  We affirm.

The trial court set forth the facts of this case.

> On May 31, 2019, Brianna Bennett, [Martin's] girlfriend and mother of his child, went to [Martin's] home at 969 East Price Street in Philadelphia with the intent to discuss their relationship and the welfare of their child.  [Martin] and Ms. Bennett arrived at his home simultaneously.  [Martin], annoyed that Ms. Bennett had come to his home, asked her why she was there.  When she told him her reasons, he became even more upset and told her to "Get the F out[.]"  Ms. Bennett prepared to leave, however prior to leaving she attempted to gather some of her and her child's personal items from [Martin's] bedroom.  In the course of collecting her things, [Martin] placed both hands around Ms. Bennett's throat, threatened to kill her, punched her multiple times in her abdomen, and choked her for at least a minute. Unable to breathe, Ms. Bennett fought back, and [Martin] eventually let go of her.

> After [Martin] released her, Ms. Bennett went to the living room and gathered more of her property, when [Martin] immediately tackled her from behind.  [Martin] then grabbed Ms. Bennett's shirt and pulled it over her face.  When she was able to remove her shirt from her face, [Martin] grabbed a black plastic bag, sat on Ms. Bennett, and covered her face with the bag.  He continued to threaten her and stated that he would take away their child and shoot her.  Appellant did not relent until his cousin, who was also present at his apartment, told him to get off of her.

> Eventually, Ms. Bennett was able to crawl down the steps and get outside where she waved down a police car.  She was transported to Frankford Hospital for treatment at which time she spoke with Detective William Lackman.

> Based on the information provided by Ms. Bennett, specifically [Martin's] threat to shoot her and his ownership of a handgun, Detective Lackman obtained a search warrant for [Martin's] home at 969 East Price Street.  [Detective Lackman]

---

[1] 18 Pa.C.S.A. §§ 2702, 2718, 907, 2701, and 2705 and 35 P.S. § 780-113(a)(30), (16), and (32).

executed the warrant the next morning, and in the course of searching for a gun, in locations where a gun could be found, he recovered marijuana, a small amount of U.S. currency, and used and new drug paraphernalia.[2]  There were 105 unused, 20 used, and 46 jars of various color and size, containing marijuana. Officer Kevin Keyes, an expert in drug packaging and delivery, testified that there were forty-one (41) $5 jars of marijuana, and five $10 jars of marijuana or "dime containers" as they are known colloquially.  The trial court accepted Officer Keyes expert opinion testimony that the marijuana was possessed with the intent to distribute.

Trial Court Opinion, 3/22/21, at 1–2 (record citations omitted).

On November 15, 2019, Martin filed a counseled one-page motion to suppress.  On December 2 and 3, 2019, the trial court heard the suppression motion, denied the motion to suppress, and held a non-jury trial.  The court found Martin guilty of the above offenses.  On February 25, 2020, Martin was sentenced to an aggregate term of 3 to 6 years of imprisonment followed by 3 years of probation.  On March 27, 2020, Martin filed a notice of appeal listing both docket numbers, which was docketed only at Case CP-51-CR-4520-2019. The notice of appeal incorrectly stated that Martin was appealing from the sentence entered on December 16, 2019.  On May 6, 2020, Martin filed a photocopy of the same notice of appeal at Case CP-CR-51-4521-2019.  Both notices of appeal were forwarded to this Court on May 21, 2020.  The trial court ordered Martin to file a concise statement of errors complained of on

---

[2] Relevant to this appeal, Ms. Bennett had reported that Martin might keep the handgun in a safe in his closet.  The safe did not open the first time Detective Lackman tried it.  In searching for a key to the safe, he opened a dresser drawer and found a black bag that was tied shut.  Detective Lackman ripped open the bag and found marijuana.  The safe was later found to be unlocked and empty.  Martin's Brief, Appendix 4 (N.T., 12/2/19, at 17–26).

appeal; Martin complied.  The trial court entered its Rule 1925(a) opinion on March 22, 2021.

On June 11, 2020, this Court issued a rule to show cause why this appeal should not be quashed for (1) being taken from an order not entered on the appropriate docket of the trial court, (2) being untimely, and (3) failure to comply with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018).  Martin filed an answer on June 15, 2020.  As to the first issue, although the notice of appeal included the handwritten date of December 16, 2019, the actual judgment of sentence was entered February 25, 2020.  As to the second issue, Martin's notices of appeal were timely under the emergency order of our Supreme Court entered April 28, 2020.  **In re: General Statewide Judicial Emergency**, 230 A.3d 1015 (Pa. filed April 28, 2020) (*per curiam*) (ordering that certain legal papers required to be filed between March 19, 2020 and May 8, 2020 shall be deemed to be timely filed if they are filed by the close of business on May 11, 2020).

As to the third issue, **Walker** had held that when a single order resolves issues arising on more than one lower court docket, failure to file separate notices of appeal would result in quashal of the appeal.  **Walker**, 185 A.3d at 977 (interpreting Pa.R.A.P. 341(a)).  Here, Martin initially filed one notice of appeal with both docket numbers on March 27, 2020, at CP-51-CR-4520-2019.  This violated **Walker**.  However, Martin corrected the error by filing a separate copy of the notice of appeal at the second docket, CP-51-CR-4521-2019, on May 6, 2020.  Critically, that notice of appeal was also filed within

the effective time period. ***General Statewide Judicial Emergency***, ***supra***.[3]

Therefore, the timely filing of a photocopy of the notice of appeal corrected

the error of the initial single filing. Under these circumstances, we conclude

that quashal and remand are not necessary, and we proceed to address the

merits of this appeal.

Martin raises two issues for our consideration:

1. Did the [trial] court err in denying Appellant's motion to suppress physical evidence where the four corners of the warrant did not establish probable cause[?]

2. Did the [trial] court err in denying Appellant's motion to suppress physical evidence where such recovered items were outside the scope of the warrant?

Martin's Brief at 6.

Martin first claims that the search warrant for his house lacked probable

cause because the information in the affidavit (*i.e.*, Ms. Bennett's claim that

Martin had a gun in the house) was stale and came from an unreliable source.

Martin's Brief at 13–18. He emphasizes that the police did not investigate

when Ms. Bennett saw a video of him with a gun in the house. ***Id.*** at 17.

Martin also suggests that Ms. Bennett had a motive to lie because of a pending

custody case, where she believed that her report would get Martin in trouble

with parole and probation. ***Id.*** at 17–18 (applying the criteria for an

---

[3] We also note that our Supreme Court recently considered the relationship between Rules 341(a) and 902 and held that "where a timely appeal is erroneously filed at only one docket, Rule 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate." ***Commonwealth v. Young***, 265 A.3d 462, 477 (Pa. 2021).

informant's reliability articulated in **Commonwealth v. Barba**, 460 A.2d 1103, 1105 (Pa. Super. 1983)).

The Commonwealth responds that due to Martin's threat to shoot Ms. Bennett, which was made the day that the warrant was issued, the information that he had previously showed her a handgun was not stale. Commonwealth's Brief at 14–15 (citing **Commonwealth v. Jones**, 323 A.2d 879 (Pa. Super. 1974)). The Commonwealth distinguishes the test for reliability of confidential informants, noting that ordinary citizens are presumed to be reliable. **Id.** at 13–14 (citing **Commonwealth v. Lyons**, 79 A.3d 1053, 1064 (Pa. 2013)). Moreover, the Commonwealth indicates that Ms. Bennett's account was corroborated by Detective Lackman's observations of her injuries. **Id.** at 14. The Commonwealth therefore submits that the trial court properly determined that there was a substantial basis for the issuing authority to find probable cause to search for a gun.

> In reviewing [suppression] issues, it is well settled:
>
>> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.
>
> **Commonwealth v. Bumbarger**, 231 A.3d 10, 15 (Pa. Super. 2020) (citation and ellipses omitted). Our scope of review is limited to the evidence presented at the suppression hearing.

> ***Commonwealth v. Bellamy***, 252 A.3d 656, 663 (Pa. Super. 2021).  With respect to a suppression court's factual findings, "it is the sole province of the suppression court to weigh the credibility of the witnesses.  Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." ***Commonwealth v. Caple***, 121 A.3d 511, 516-17 (Pa. Super. 2015) (citation omitted).
>
> At a suppression hearing, "the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained." ***Commonwealth v. Galendez***, 27 A.3d 1042, 1046 (Pa. Super. 2011) (*en banc*) (citation, quotation marks, and brackets omitted); ***see also*** Pa.R.Crim.P. 581(H) (at a suppression hearing, the Commonwealth "shall have the burden ... of establishing that the challenged evidence was not obtained in violation of the defendant's rights.").  The preponderance of the evidence is "the lowest burden of proof in the administration of justice, and it is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly in one's favor." ***Commonwealth v. Ortega***, 995 A.2d 879, 886 n.3 (Pa. Super. 2010).

***Commonwealth v. Heidelberg***, 267 A.3d 492, 498–99 (Pa. Super. 2021) (*en banc*).

In reviewing a challenge to a search warrant based on an affidavit of probable cause, our review is limited to "the information within the four corners of the affidavit." ***Commonwealth v. Batista***, 219 A.3d 1199, 1202 (Pa. Super. 2019) (quoting ***Commonwealth v. Rogers***, 615 A.2d 55, 62 (Pa. Super. 1992), and citing Pa.R.Crim.P. 203(D)).  A reviewing court ensures that the issuing authority "had a substantial basis for concluding that probable cause existed," instead of conducting a *de novo* review of that determination. ***Id.*** (quoting ***Illinois v. Gates***, 462 U.S. 213, 238–39 (1983), and ***Commonwealth v. Huntington***, 924 A.2d 1252, 1259 (Pa. Super. 2007)).  "Probable cause exists where the facts and circumstances within the affiant's

knowledge and of which he [or she] has reasonably trustworthy information are sufficient in and of themselves to warrant a [person] of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1081–82 (Pa. 2017). A search should be conducted when "the police officers have a reasonable belief that the items to be seized are related to criminal conduct and that those items are presently located in the place to be searched." *Commonwealth v. Waltson*, 724 A.2d 289, 292 (Pa. 1998) (citing *Commonwealth v. Jackson*, 337 A.2d 582 (Pa. 1975)).

Probable cause may not exist if the information supporting it is "stale." *Commonwealth v. Novak*, 335 A.2d 773, 775 (Pa. Super. 1975). Whether information in an affidavit is stale depends on the totality of the circumstances, such as the age of the information and how long the items to be seized are likely to be kept at the location to be searched. *Commonwealth v. Green*, 204 A.3d 469, 484 (Pa. Super. 2019). For example, information about stolen guns was not stale after five weeks because the guns were "hot" and thus hard to dispose. *Commonwealth v. Klimkowicz*, 479 A.2d 1086, 1088–89 (Pa. Super. 1984); *see also Jones*, 323 A.2d 879 (holding that information about guns used to commit a crime was not stale after three weeks).

When information in a search warrant affidavit depends on a tip from a **confidential informant**, this "may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant

himself participated in the criminal activity." ***Commonwealth v. Manuel***, 194 A.3d 1076, 1083 (Pa. Super. 2018) (*en banc*) (emphasis omitted) (citing ***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011)).

In contrast, Pennsylvania courts do not require an averment of facts to establish the credibility and reliability of an **ordinary citizen**. *Lyons*, 79 A.3d at 1064–65; ***accord Commonwealth v. Brogdon***, 220 A.3d 592, 600 (Pa. Super. 2019) ("[A] citizen informer, identified eyewitness[,] or ordinary citizen reporting his or her observations of a crime stands on a different ground than a police informer." (quoting with favor the suppression court opinion)). Notably, the statement of a **victim** of a crime is sufficient to establish probable cause. ***Commonwealth v. George***, 878 A.2d 881, 884 (Pa. Super. 2005) (citing ***Commonwealth v. Stokes***, 389 A.2d 74, 77 (Pa. 1978), *abrogated on **Aguilar**/**Spinelli** grounds by **Gates**, **supra**).

Here, in relevant part, the search warrant summarizes an interview between the affiant (Detective Lackman) and Ms. Bennett (BB) on May 31, 2019:

> [Detective] Lackman #667 interviewed BB inside NWDD, in brief she stated that she and the offender have a 5 month old child together, who was present for the incident and assault this morning. Earlier, preceding midnight, she was on the phone with the offender who is her boyfriend, and he told her that he wanted money from her. Around 11:45 pm (5-30-19) BB went to the offenders residence, 969 E Price St, 2nd floor, with her their daughter, Martin let her in and they got into an argument, he wanted money from her, she felt like he was leading her on, and didn't want to give him money. While arguing, the offender pushed BB back and choked her, both hand around the [throat], squeezing for approximately 30 seconds. BB described not being

able to breathe. She added that during this Martin threatened to shoot and kill her.

BB went on to say she moved to another room in the apartment, the offender followed and he pushed her to the ground. The offender then climbed on top of her, sitting on her and grabbed a plastic bag laying there, covering her face, smothering her. She described these actions as going on for about 2 minutes, only stopping when the offender[']s cousin (later ID'ed as JB), who lives there also, came out and stopped him. BB believed that Martin was going to kill her, adding that he threatened her that he was going to kill her during the second strangulation/smothering event.

[Detective] Lackman observed faint redness in the area at the base of BB's throat and left bicep, photographing those injuries.

In addition to Martin making verbal threats to shoot BB, BB added that she has observed Martin before in possession of a black colored handgun, adding that Martin had contacted her via a messenger app, a video conversation, she did not recall exactly when but within the last 30 days she believed. During that conversation the offender, Martin, showed her a black handgun, which she immediately recognized as a firearm. BB added that before that point in time, she had purchased a black colored safe for the offender, at his request, that safe is kept in the offender[']s bedroom and she believes the gun is stored in there.

[Detective] Lackman conducted a criminal history check on the offender, finding he has [a robbery conviction that renders him unable to possess firearms].

Martin's Brief, Appendix 1.

Based on the affidavit in support of the search warrant, we find no error in the trial court's determination that the issuing authority had a substantial basis to find probable cause to search for the gun. *See* Trial Court Opinion at 4–5. Although Martin showed Ms. Bennett the handgun some 30 days prior, he threatened to shoot and kill her on the day that the warrant was issued. Because Martin was a person who could not legally possess a firearm, there is

a reasonable probability that Martin would keep the handgun throughout the 30 days since he showed it to Ms. Bennett. Therefore, the information about the handgun was not too stale to support a determination that the handgun would be located in Martin's residence. **Klimkowicz**, **supra**; **Jones**, **supra**. Furthermore, Ms. Bennett's identity as a victim reporting an offense, corroborated by Detective Lackman's observations of her injuries, provides sufficient reliability to find probable cause. **George**, **supra**. Therefore, we affirm the denial of Martin's motion to suppress for lack of probable cause.

In his second issue, Martin claims that the bagged marijuana recovered from his dresser was outside the scope of the warrant. Martin argues that the tied bag could not contain a handgun, and the bag was not readily identifiable as contraband under the "plain view doctrine." Martin's Brief at 19 (citing **Commonwealth v. Harvard**, 64 A.3d 690, 698 (Pa. Super. 2013)). Further, there was no need for Detective Lackman to look for a key to the safe because the safe was unlocked. **Id.**

The Commonwealth responds that the search warrant authorized officers to search for gun accessories, which would include a key to a case that could hold a gun. Commonwealth's Brief at 15–17. The scope of a warranted search "extends to the entire area where the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secured." **Id.** at 16 (quoting

*Commonwealth v. Waltson*, 724 A.2d 289, 292 (Pa. 1998)[4]). Additionally, the tied bag in the dresser could have contained the plastic bag that Martin used in his attack on Ms. Bennett, which the police were also permitted to search for and seize pursuant to the warrant. *Id.* at 17.

At the suppression hearing, although it "[didn't] know if [the bag] would be in plain view," the court concluded that it was reasonable for Detective Lackman to look for the gun inside the dresser drawer. N.T., 12/2/19, at 38.[5] On that basis, the court denied suppression of the drugs. *Id.* The court later explained its reasoning that the marijuana and paraphernalia were discovered "in areas where guns can normally be found" while the police were executing a valid warrant to search for a gun. Trial Court Opinion at 5 (citing *Commonwealth v. Korn*, 139 A.3d 249, 256 (Pa. Super. 2016) (in turn quoting *Waltson*, *supra*)).

---

[4] The *Waltson* Court gave an example that police officers could not search for a stolen car in one's dresser drawers but could search "any places where the contraband may be found." *Id.* at 292 n.2. Thus, officers executing a search warrant for drugs and money can search in a safe, *Commonwealth v. Irvin*, 134 A.3d 67, 75 (Pa. Super. 2016), a backpack, *Commonwealth v. Caple*, 121 A.3d 511, 521 n.2 (Pa. Super. 2015), or clothing not being worn, *Commonwealth v. Reese*, 549 A.2d 909, 911–12 (Pa. 1988) (jacket); *Commonwealth v. Petty*, 157 A.3d 953, 957 (Pa. Super. 2017) (pants).

[5] Detective Lackman testified that when he opened the dresser drawer, he was looking for keys to the safe where the gun could have been, not the gun itself. N.T., 12/2/19, at 22. However, the constitutional inquiry does not depend on the officer's subjective intent. *Commonwealth v. Livingstone*, 174 A.3d 609, 637 (Pa. 2017) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) ("The officer's subjective motivation is irrelevant" "as long as the circumstances, viewed *objectively*, justify [the] action."))

Here, Martin claims that the Commonwealth did not prove that the marijuana was validly obtained under the plain view doctrine, which

> permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself.

*Commonwealth v. Luczki*, 212 A.3d 530, 546–47 (Pa. Super. 2019) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 656 (Pa. 2010)).  If police have a valid search warrant, they do not violate the Fourth Amendment in arriving at the location and in searching for the items permitted by the search warrant.  *E.g.*, *Commonwealth v. Anderson*, 40 A.3d 1245, 1249 (Pa. Super. 2012); *see Waltson*, *supra* (limiting the scope of a warranted search to include containers and receptacles of the items to be searched for and seized).

In this case, we agree with the trial court that Detective Lackman was permitted to search for a handgun in a dresser drawer that could contain a handgun.  Having instead found a black bag that was tied shut, it was reasonable for Detective Lackman to suspect that the black bag could contain the key to a safe that could contain the handgun.  Once Detective Lackman

ripped open the bag, he saw marijuana in his plain view, whose incriminating nature was immediately apparent.[6]

Further, we agree with the Commonwealth that the search warrant permitted the police to search the tied bag for other items subject to the search warrant that would fit inside the tied bag. The search warrant was for "Any/all evidence of assault, including **plastic bag(s)**, photos of property damage, etc/ any/all evidence of firearms, includin[g] any gun/long gun, ammo, accessories for firearms, etc/ safes, including for[c]ed entry if needed/ **proof of residence such as mail, IDs etc.**" Martin's Brief, Appendix 1 (emphasis added). The plastic bags that Martin used to try to smother Ms. Bennett, as well as Martin's mail and identification, could fit inside the tied bag. Therefore, the warrant permitted Detective Lackman to search inside the tied bag for these items. *Waltson*, *supra*. Although the trial court did not rely on this reasoning, we find that this is an additional basis to deny suppression. *Commonwealth v. Jones*, 193 A.3d 957, 965 (Pa. Super. 2018) (noting that we may affirm a suppression order for any reason supported by the record). Therefore, we affirm the denial of suppression.

Judgment of sentence affirmed.

---

[6] Although "marijuana [is] no longer *per se* illegal in this Commonwealth" following the Medical Marijuana Act (MMA), "possession of marijuana [is still] illegal for those not qualified under the MMA." *Commonwealth v. Barr*, 266 A.3d 25, 41 (Pa. 2021). Under the MMA, unused medical marijuana must be kept in its original package, which is subject to labeling requirements. 35 P.S. § 10231.303(b)(6), (8). Here, the illegal nature of marijuana in a tied-up black bag was immediately apparent. Martin has not argued otherwise.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2022