J-S80037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OTHONIER ALTRUZ, | : | |
| | : | |
| Appellant | : | No. 2526 EDA 2016 |

Appeal from the Judgment of Sentence May 12, 2016
in the Court of Common Pleas of Delaware County,
Criminal Division at No(s): CP-23-CR-0004485-2015

BEFORE: BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:           **FILED FEBRUARY 27, 2018**

Othonier Altruz ("Altruz") appeals from the judgment of sentence entered following his conviction of rape, statutory sexual assault, sexual assault, aggravated indecent assault of a child, indecent assault of a person less than 16 years of age, indecent exposure, corruption of minors, and unlawful contact with a minor—open lewdness.[1] We affirm.

On June 1, 2015, at around 8:00 a.m., the victim was dropped off by her mother at her school. The victim, who was 13 years and 11 months old at the time, decided to skip school. The victim walked past Altruz, who was sitting in his vehicle. As she did so, Altruz invited the victim to get inside his vehicle. The victim complied, recognizing Altruz as the pastor of her church. Altruz subsequently drove the victim to the Red Roof Inn in Essington,

_____

[1] **See** 18 Pa.C.S.A. §§ 3121, 3122, 3124.1, 3125, 3126, 3127, 6301, 6318.

Pennsylvania. In its Opinion, the trial described what next transpired as follows:

> [The victim] followed [Altruz] into a hotel room … and he locked the door. [Altruz] then instructed [the victim] to remove her clothes, and she said no. … [Altruz] then removed [the victim's] clothes himself, despite her struggles to remain clothed. When all of her clothing was removed, [Altruz] removed his own clothing. [Altruz] then pushed [the victim's] shoulders and she fell onto the bed. He held her by the shoulders and held her down on the bed. … [Altruz] then forcefully put his penis into her vagina until he ejaculated. Afterwards, [Altruz] told her to hurry up and get dressed because he had to take her back to school. [The victim] then went to the bathroom and cleaned herself up with toilet paper.
>
> [The victim] and [Altruz] left the hotel and [Altruz] dropped her off at school. When they arrived, they saw her mother outside. [The victim] couldn't recall specifically why her mother was at the school at this time, but she thought that it was perhaps because her brother had an appointment. [The victim] said hello to her mother, and then [the victim] left with her mom. When her mother asked her what she was doing outside of the building, [the victim] didn't answer.
>
> The following day, June 2, 2015, was [the victim's] school graduation. According to [the victim], her parents were suspicious of her behavior on June 1st, and her father asked her what she had been doing outside of the school. She testified that she "told him a fake story" that she had skipped school and that a stranger had snatched her on the street. Upon telling him this, her father called the police[,] and they both went to the police station. [The victim] repeated the account to the police at the police station, but when they got home later that night, she eventually told her parents that her story wasn't the truth[,] and asked them to take her back to the police station. According to [the victim], it was then that she told the police what had really occurred between herself and [Altruz].

Trial Court Opinion, 1/30/17, at 4-5. On June 3, 2015, June Elcock-Messam, M.D. ("Dr. Elcock-Messam"), examined the victim. Dr. Elcock-Messam testified at trial that the victim had been exposed to genital trauma.

Police officers subsequently went to Altruz's home and asked whether he would accompany them to the police station. Although Altruz responded in the affirmative, he subsequently fled out of the back door. Police later apprehended Altruz.

A jury subsequently convicted Altruz of the above-described charges. Altruz filed a Motion for judgment of acquittal and a Motion for a mistrial. After oral argument, the trial court denied both Motions. The trial court sentenced Altruz to an aggregate prison term of 93-192 months, followed by 96 months of probation. Altruz filed a post-sentence Motion, which the trial court denied. Thereafter, Altruz filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Altruz presents the following claims for our review:

[I.] Whether the trial court abused its discretion when it denied the defense [M]otion for mistrial based on unfair surprise and discovery violations on the Commonwealth's revelation at trial that the [victim] had made a suicide attempt shortly before trial?

[II.] Whether the sentence imposed was harsh and excessive under the circumstances[?]

Brief for Appellant at 10 (some capitalization omitted).

Altruz first claims that the trial court improperly denied his Motion for a mistrial. *Id.* at 17. Altruz challenges the denial of a mistrial based upon the Commonwealth's revelation, at trial, that the victim had attempted suicide. *Id.* According to Altruz, the Commonwealth failed to produce this information during discovery, in response to Altruz's request for "any evidence which will impeach the credibility of any defense witness." *Id.* In support, Altruz points out the victim's testimony "that her mom caught her with scissors shortly before trial, and she had been trying to kill herself by cutting her wrists." *Id.* Altruz also directs our attention to testimony from the victim's mother that "the other day, I found her in the dark with a pair of scissors[,] and she told me she wanted to die." *Id.* (citation omitted). Altruz asserts that this evidence could have been exculpatory, as it could have gone to the victim's state of mind, and impacted her ability to recall events. *Id.* at 21.

> Our review of a trial court's denial of a motion for a mistrial "is limited to determining whether the trial court abused its discretion." **Commonwealth v. Fortenbaugh**, 620 Pa. 483, 69 A.3d 191, 193 (Pa. 2013) (internal quotation marks omitted). A trial court may grant a mistrial "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v. Simpson**, 754 A.2d 1264, 1272 (Pa. 2000).

**Commonwealth v. Cash**, 137 A.3d 1262, 1273 (Pa. 2016).

In its Opinion, the trial court addressed Altruz's claim and concluded that it lacks merit. **See** Trial Court Opinion, 1/30/17, at 12-15. We agree

with the sound reasoning of the trial court, and its conclusion that the claim lacks merit. *See id.* We therefore affirm on the basis of the trial court's Opinion with regard to Altruz's first claim. *See id.*

In his second claim of error, Altruz challenges the discretionary aspects of his sentence. Brief for Appellant at 24. Altruz argues that "there is a substantial question that the incarceration is not appropriate per the [S]entencing [C]ode[,] because total confinement requires deep consideration on the record." *Id.*

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four[-]part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170.

In this case, Altruz filed a timely post-sentence Motion, a timely Notice of Appeal, and includes in his brief a separate statement pursuant to Pa.R.A.P. 2119(f). However, Altruz's Rule 2119(f) Statement baldly alleges

that the sentence imposed was unduly harsh and excessive under the circumstances. Brief for Appellant at 15.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011). Further,

> [a] substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Id.*** (internal citations omitted). Bald allegations of excessiveness, without more, will not raise a substantial question. ***See, e.g., Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (stating that "[a]n appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.").

Here, Altruz baldly asserts that his sentence is "unduly harsh and excessive under the circumstances herein." Brief for Appellant at 15. Altruz presents no other support for his claim. We therefore conclude that Altruz has not presented a substantial question that his sentence is inappropriate under the Sentencing Code.

We note that in the Argument section of his brief, Altruz couples his excessiveness claim with a claim that the trial court failed to comply with 42 Pa.C.S.A. § 9721, which sets forth the factors to be considered by the sentencing court. This Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014).

Even if Altruz had included this portion of his sentencing challenge in his Rule 2119(f) Statement, thereby establishing a substantial question, we would conclude that he is not entitled to relief.

"Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." **Commonwealth v. Crump**, 995 A.2d 1280, 1282 (citation omitted). "An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id.** (citation omitted).

Altruz asserts that the trial court failed to consider the factors specified by 42 Pa.C.S.A. § 9721. Brief for Appellant at 25. In support, Altruz argues that the trial court failed to state, on the record, the reasons for the sentence it imposed, and that the court's "list of the materials it read is not reasons." **Id.** at 26. Altruz states that "[n]o attention was given to whether or not [Altruz] had been convicted of another crime," whether he would

commit another crime if not incarcerated, whether partial confinement is indicated, or the other considerations mandated by 42 Pa.C.S.A. § 9725. Brief for Appellant at 27.

In its Opinion, the trial court addressed Altruz's claim and concluded that it is without merit. **See** Trial Court Opinion, 1/30/17, at 17-19. If Altruz had presented a substantial question in his Rule 2119(f) Statement, we would agree with the sound reasoning of the trial court, and affirm on this basis with regard to Altruz's sentencing challenge. **See id.**; **see also Commonwealth v. Hunzer**, 868 A.2d 498, 514 (Pa. Super. 2005) (stating that, when sentencing in the standard range of the sentencing guidelines, "a sentencing judge may satisfy [the] requirement of disclosure on the record of his reasons for imposition of a particular sentence without providing a detailed, highly technical statement.").

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/18

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA | NO.     4485-2015

          V.

OTHONIER ALTRUZ

### OPINION

Mallon, J.                                  Filed:   *1-30-17*

Appellant, Othonier Altruz, appeals to the Superior Court from the Judgment of Sentence entered by this Court on May 12, 2016. The nature and history of the case are as follows:

### I. Nature and History of the Case

Following a four-day trial, with jury selection on January 15, 2016, and trial beginning on January 20, 2016 and ending on January 22, 2016, a jury found the Appellant guilty of rape, statutory sexual assault, sexual assault, aggravated indecent assault of a child, indecent assault of a person less than 16 years of age, indecent exposure, corruption of minors, and unlawful contact with a minor – open lewdness.

Sentencing was deferred pending an evaluation by the Pennsylvania Sexual Offender Assessment Board. On May 10, 2016, defense counsel filed a "Motion for Mistrial Due to Prejudicial Testimony Following Revelation of a Suicide Attempt", a "Motion for Judgment of Acquittal", and "Motion for Mistrial Due to Errors in Translation." The court heard argument on these motions prior to the sentencing hearing on May 12, 2016, and denied them in open court.[1] Appellant was sentenced to

---

[1] The court then formalized this denial in an order dated May 16, 2016.

serve an aggregate sentence of 93 months to 192 months of imprisonment in a state facility, as well as 96 months of consecutive probation. Appellant was found to be a sexually violent predator.

On May 18, 2016 defense counsel filed a "Motion for Reconsideration" and a "Motion to Withdraw as Counsel." A hearing was held on June 6, 2016 at which time the court accepted defense counsel's motion to withdraw as counsel. On July 12, 2016, Appellant filed a *pro se* notice of appeal. The Public Defender's Office subsequently entered its appearance and filed a notice of appeal on August 4, 2016. The court issued an order requesting a concise statement of matters complained of on appeal on August 11, 2016, and thereafter granted two (2) requests for an extension of time to file a concise statement. Appellant raises the following issues in his Statement of Matters Complained of on Appeal:

(1) Whether the sentence imposed was harsh and excessive under the circumstances. There is a substantial question that the sentence is not appropriate per the sentencing code because it requires deeper consideration as to total confinement, whether partial confinement is indicated, whether correctional treatment can only be completed during incarceration, and whether a lesser sentence would depreciate the seriousness of the offense.

(2) Whether the Trial Court abused its discretion when it denied the defense motion for mistrial based on unfair surprise and discovery violations on the Commonwealth's revelation at trial that the alleged victim had made suicide attempts?

(3) Whether the Trial Court abused its discretion when it denied the defense motion for judgment of acquittal and the post-sentence motion challenging the sufficiency of the evidence because the age of the defendant was not properly placed into the record at trial?

(4) Whether the Trial Court abused its discretion when it overruled the defense objection and the post-sentence motion based on the inadequacy, lack of qualifications and extra-judicial conversations of the interpreter?

2

## II.    Discussion

**Sufficiency of the Evidence**

Appellant claims that the court abused its discretion when it denied the defense motion for judgment of acquittal and the post-sentence motion challenging the sufficiency of the evidence because the age of the Appellant was not properly placed into the record at trial. In the instant case, a Motion for Judgment of Acquittal was filed on May 10, 2016 in which the defense argued that the verdict should be set aside because there was no testimony elicited at trial establishing the defendant's age. Specifically, he claimed that the evidence was insufficient to sustain the Appellant's convictions of statutory sexual assault, aggravated indecent assault, indecent assault, and corruption of minors. The court heard oral argument on this motion on May 12, 2016, and the motion was denied in open court.

In reviewing a challenge to the sufficiency of the evidence, an appellate court considers the evidence admitted at trial and all reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Ratsamy,* 594 Pa. 176, 934 A.2d 1233, 1237 (2007). A court may not substitute its judgment for that of the fact-finder and the critical inquiry is whether the evidence *believed by the fact-finder* was sufficient to support the verdict as opposed to whether the court believes the evidence established guilt beyond a reasonable doubt. *Commonwealth v. Sinnott,* 612 Pa. 321, 331, 30 A.3d 1105, 1110 (2011) (emphasis added). Lastly, the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant. *Commonwealth v. Charlton,* 920

3

A.2d 554, 455 (Pa. Super. 2006). The evidence, viewed in the light most favorable to the Commonwealth follows.

The Commonwealth produced evidence that the victim was 13 years and 11 months of age on the date of these crimes. N.T. 1/20/16, p. 43. The victim was born July 5, 2001. *Id.* The rape occurred on June 1, 2015. *Id.* at 45. The evidence established that on June 1, 2015, after the victim in this case, (hereinafter referred to as "M.M."), was dropped off at Chester Community Charter School by her mother, she walked by the Appellant who·was sitting in his car. *Id. at* 45-50. The Appellant told her to get in, and M.M. complied. *Id.* at 50-51. According to M.M., she knew the Appellant as he·was her Pastor. *Id.* at 47-48. M.M. used to play the piano at the Appellant's church almost every day. *Id.* at 48-49. She described the Appellant as a nice person. *Id.* at 55. Once she got in the car, the Appellant drove away from the school and took her to a hotel. *Id.* at 53-54. Specifically, the Appellant took her to the Red Roof Inn in Essington, Pennsylvania. He told her to follow him, and she did. *Id.* at 55. ·

M.M. followed the Appellant into a hotel room at the Red Roof Inn, and he locked the door. *Id.* at 55. The Appellant then instructed her to take off her clothes, and she said no. *Id.* at 61. M.M. explained that the Appellant then removed her clothes himself, despite her struggles to remain clothed. *Id.* at 62. When all of her clothing was removed, the Appellant removed his own clothing. *Id.* at 63. The Appellant then pushed her shoulders and she fell onto the bed. *Id.* He held her by the shoulders and held her down on the bed. *Id.* at 64. M.M. testified that the Appellant then forcefully put his penis into her vagina until he ejaculated. *Id.* at 66-67. Afterwards, the Appellant told

4

*Id.* at 81. She testified that on one occasion, she attempted to cut her wrists. *Id.* at 81-82.

Dr. June Elcock-Messam, an expert in child sexual abuse, testified at trial. N.T. N.T. 1/21/16 pp. 5-6. Dr. Messam evaluated M.M. on June 3, 2015 for a child abuse evaluation following her report of a sexual assault to Officer Jones. *Id. at* 6-7. Dr. Messam testified that she first met with M.M.'s father and went over her past medical and social history with him. *Id.* at 8. She then met with M.M. alone. *Id.* Dr. Messam explained that she performed a physical examination of M.M. which included a rape kit. *Id.* at 9. Her evaluation was difficult because the physical examination portion caused M.M. a significant amount of pain and not easy for her to tolerate. *Id.* at 10. Dr. Messam testified that M.M. was very swollen and concluded that she had recently been exposed to genital trauma of some kind. *Id.* at 11. However, she was unable to examine her vagina or hymen. *Id.* at 22. M.M. told Dr. Messam that "he put his penis in my vagina." *Id.* at 12. Because M.M. had taken a shower after the incident, Dr. Messam was unable to collect a number of samples that she would typically send out for testing. *Id.* at 13.

Officer Robert Jones, an officer with the Juvenile Division of the City of Chester Police Department, testified that he interviewed M.M. on June 2, 2015. *Id.* at 30-32. M.M. arrived at the police station and a taped statement was taken from her. *Id.* at 32. M.M. told him that she had skipped school and walked over towards Chester Transportation Center and was abducted by an unknown male who threw a hood over her head and put her in what she believed was a car. *Id.* at 45. Later that night after

6

M.M. told her parents that she was not entirely truthful in her first statement to the police, they again contacted Officer Jones and M.M. gave a second taped statement. N.T. 1/20/16 p. 199-201 and N.T. 1/21/16 p. 32-33. She told him that she was sexually assaulted in a vehicle and that she had lied in her first statement about not knowing who her assailant was. *Id.* She identified the Appellant as her assailant and showed Officer Jones a photo of him on Facebook. *Id.* She further stated that the incident had occurred in a church parking lot. *Id.* at 55. Officer Jones made an appointment for M.M. to go and see Dr. Messam the following day. *Id.* at 32, 45.

Officer Jones testified that he and a fellow officer followed up on M.M.'s complaint and had the Appellant's car towed in order to further investigate her allegations. *Id.* at 33-34. When they arrived at the Appellant's home, his wife and daughter appeared outside and he followed. *Id.* at 33. Officer Jones asked the Appellant if they could talk to him at the police station, and the Appellant said "yes" and explained that he had to first go inside and get his sneakers and wallet. *Id.* at 34. Instead, the Appellant went inside his home and fled out the back door.

According to Officer Jones, the Appellant was later apprehended and his other car was towed to the police station.[2] *Id.* at 35. On June 6, 2015, M.M. was brought back into the police station so that the police could obtain a buccal swab from her. *Id.* at 36. When she was informed that the Appellant was in custody, she revealed to Officer Jones that she had also lied when she stated that the incident had occurred in a vehicle and told him that the assault had occurred at the Red Roof Inn. *Id.* at 36.

---

[2] A search warrant was obtained to search the Appellant's car. N.T. 1/21/16, pp. 55-56

Consequently, Officer Jones then went to the Red Roof Inn to further investigate and discovered that the Appellant had been to the hotel on two separate occasions. *Id.* at 37-38.

Officer Jose Alvarez, who often worked in the area of Chester Community Charter School, also testified at trial. N.T., 1/21/16, pp. 68-69. Officer Alvarez was familiar with the Appellant and often observed him dropping M.M. and her brother at the school in the mornings. *Id.* at 69-70. Officer Alvarez assisted in identifying the Appellant's vehicle.

In addition to the testimony and evidence presented by the victim and police, the jury also heard testimony from Christine Bilios, the front office manager at the Red Roof Inn in Essington. She had worked there for almost 18 years. She did not see the Appellant check-in the day of the rape but she testified as to the check-in and check-out procedures at the hotel. According to the hotel's billing records the Appellant rented a room on June 1, 2015, with a Visa credit card in his name. The practice of the hotel is to ask for identification when presented with a credit card. This information is then put into the hotel's computer and that is how payment for the room is made. N.T. 1/20/16 pp. 229-232. A receipt for the room payment was generated. *Id.* at 230. *See* also Exhibit C-20. Lisa Loggia, who worked at the front desk at the Red Roof Inn, testified that she recalled checking the Appellant into the hotel that day and seeing him leave with a young lady that same afternoon. N.T., 1/20/16, pp. 235-39; 229-32.

At trial, defense counsel maintained that the sexual encounter between the Appellant and M.M. did not occur, and argued that M.M. had gotten caught up in a web

8

of lies. The following stipulation was read into evidence at trial:

> *On June 4, 2015 the (sic) number of fingernail, hair and pubic hair, oral swabs and vaginal swabs and buccal swabs were taken from the Defendant and the alleged victim as well as from the suspect vehicle belonging to the Defendant. A copy of the serology laboratory report is attached to this stipulation as Exhibit A. On November 25, 2015 the DNA analysis was returned from the items listed in the serology laboratory report, a copy of the DNA analysis is attached as Exhibit B. Paragraph three, the DNA analysis could not produce any conclusive results for either the alleged victim or the Defendant. Signed by the Office of the District Attorney and by counsel for the defense.*

N.T., 1/21/16, pp. 92-93; *see also* Defense Exhibit D-23.

A person commits statutory sexual assault, a first-degree felony, when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other. 18 Pa.C.S.A. § 3122.1(b). Aggravated indecent assault of a child, a first-degree felony, is committed where a person engages in "penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if: ... the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3125(a) (8). Indecent assault of a person less than sixteen years of age, a second-degree misdemeanor, is committed where: a "person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant

9

and...(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other. 18 Pa.C.S.A. § 3126(A) (8). Section 6301 of the Crimes Code defines "Corruption of minors:" "whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree." Finally, "Unlawful contact with minor," a third-degree felony, is committed when a person is "intentionally in contact with a minor, ...for the purpose of engaging in an activity prohibited under [Chapter 31 (relating to sexual offenses)] and either the person initiating the contact or the person being contacted is within this Commonwealth." 18 Pa.C.S.A. § 6318 (A)(2).

Circumstantial evidence proved beyond a reasonable doubt that M.M. was 13 years and 11 months age on June 1, 2015 when she was raped and that the Appellant was more that eleven years older than his victim. The Commonwealth may sustain its burden of proving each element of the crime charged beyond a reasonable doubt by means of wholly circumstantial evidence. See e.g. Commonweath v. Vargas, 108 A.3d 858, 867–68 (Pa. Super. 2014) *quoting* Commonwealth v. Brown, 23 A.3d 544, 559–560 (Pa. Super.2011). A jury may rely on circumstantial evidence alone:

> Circumstantial evidence alone may be sufficient to prove the defendant's guilt. If there are several separate pieces of circumstantial evidence, it is not necessary that each piece standing separately convince you of the defendant's guilt beyond a reasonable doubt. Instead, before you may find the defendant guilty, all the pieces of circumstantial evidence, when considered together, must reasonably and naturally lead to the conclusion

10

that the defendant is guilty and must convince you of the defendant's guilt beyond a reasonable doubt. In other words, you may find the defendant guilty based on circumstantial evidence alone, but only if the total amount and quality of that evidence convince you of the defendant's guilt beyond a reasonable doubt.

*Pennsylvania Suggested Standard Criminal Jury Instructions 7.02A Direct and Circumstantial Evidence.*

M.M. was born on July 5, 2001. Id. at pp. 43-44. Although no witness testified as to the Appellant's age on the day of the rape there was evidence from which jury could find beyond a reasonable doubt that the Appellant was at least eleven (11) years older than the victim. Betzaida Mass testified that she had "known" the Appellant for seventeen (17) years. When asked "how do you know him." she said that "He's my husband". N.T. 1/21/16 pp. 94-95. Though there is nothing of record to indisputably establish that they were married for seventeen (17) years, her testimony along with the jurors' ability to observe Ms. Mass and the Appellant during his four (4) day trial enabled the jury to conclude beyond a reasonable doubt, that the age difference required by statute (11 years) was sufficiently proven. *Commonwealth v. Nelson,* 320 Pa. Super. 488, 467 A.2d 638 (1983). Physical appearance is circumstantial evidence of Appellant's approximate age. *Commonwealth v. Miller,* 441 Pa.Super. 320, 657 A.2d 946 (1995), *Commonwealth v. Jones,* 314 Pa.Super. 497, 461 A.2d 267 (1983)[3]

---

[3] The court also had the ability to observe the Appellant during his trial. In light of this and other circumstantial evidence, e.g., the ability to manage churches both here and in Puerto Rico N.T. 1/21/16 pp. 94-95, produced at trial the court denied Appellant's trial attorney's motion to acquit for failure to produce testimony from a certified document or live witness as to the Appellant's age. The court believed that unless the Appellant suffered from a medical condition that causes rapid aging, his physical appearance alone allowed the court and the jury, the finder of fact, to conclude that Appellant was more than eleven years older than the victim.

11

By its verdict the jury found that the eleven (11) year age difference was sufficiently proven. Finally, the Commonwealth's Exhibit 15 Incident Report of the Chester City Police Department was admitted into evidence. It recites the Appellant's date of birth as 06/26/1961 and it recites that he was 53 years of age when arrested. Though this exhibit was admitted it was not sent out with the jury. It was further established that the Appellant was married and not to M.M.

This court will not substitute its judgment for that of the jury in this case and reiterates that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Bishop,* 742 A.2d 178, 189 (Pa.Super.1999), *appeal denied,* 563 Pa. 638, 758 A.2d 1194 (2000). The court respectfully submits that this issue is without merit.

## Motion for Mistrial

The Appellant claims that court abused its discretion when it denied the defense motion for mistrial based on "unfair surprise" and "discovery violations" on the Commonwealth's revelation at trial that the alleged victim had made suicide attempts.

In the case *sub judice*, at trial testimony was offered that M.M. had attempted suicide following the sexual assault. Following an objection by the defense, the court denied a motion for mistrial. Defense counsel argued unfair surprise and claimed that this information was *Brady* material. N.T. 1/20/2016 at 82-87. On May 10, 2016, defense counsel renewed his motion in a pre-sentence motion entitled *Motion for Mistrial Due to Prejudicial Testimony Following Revelation of a Suicide Attempt.* The court denied this motion in open court on May 12, 2016.

12

At trial M.M. testified that after the sexual assault she attempted to commit suicide by using a pair of scissors to cut her wrists.. Appellant's trial counsel made a timely motion for a mistrial on the grounds that the Commonwealth violated *Brady vs. Maryland*, 373 U.S. 83, 93, 83 S. Ct. 1194, 1200, 10 L.Ed.2d 215 (1963), by failing to advise Defense counsel of this fact. N.T. 1/20/16 pp. 81-83, 161-172. The court denied said motion *Id.*at 170.

To establish a *Brady* violation, appellant must demonstrate: (1) the prosecution concealed evidence (2) the evidence was either *exculpatory or impeachment evidence favorable to him*; and (3) he was prejudiced. *Commonwealth v. Treiber*, 121 A.3d 435, 460-61 (Pa. 2015) citing, *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111, 1127, 1130 (2011) (quoting *Commonwealth v. Paddy*, 609 Pa. 272, 15 A.3d 431, 450 (2011)). To establish prejudice, appellant must demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136, 1141 (2001). "'Impeachment evidence[,] which goes to the credibility of a primary witness against the accused[,] is critical evidence and it is material to the case whether that evidence is merely a promise or an understanding between the prosecution and the witness.' " *Chmiel*, at 1131 (quoting *Commonwealth v. Strong*, 563 Pa. 455, 761 A.2d 1167, 1175 (2000). "However, mere conjecture as to an understanding is not sufficient to establish a *Brady* violation." *Id.* (citation omitted). Finally, we note "[t]here is no *Brady* violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question[.]" *Paddy*, at 451.

13

In the instant matter, the Appellant's claimed *Brady* violation clearly fails on at least two (2) of the three (3) bases that are required. First and foremost is the fact of the victim's suicide attempt is neither "exculpatory or impeachment evidence favorable to him". Second, if this fact had been known to the Appellant's trial counsel beforehand there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different". The record developed at side bar shows that other than being aware of the suicide attempt the Commonwealth had no [written] report or any "details to which that was going to be testified to". N.T. 1/20/16 pp. 83-84. The Assistant District Attorney first learned of this fact the night before the trial during trial prep. N.T. 1/20/16 p. 161; N.T. 5/5/16 p. 14. Third, the suicide attempt happened long after the rape (N.T. 1/20/16 p. 185) and does not rise to the level of the type of evidence that might exculpate the Appellant e.g., the DNA of a third party, video recordings, written confessions of a third party, prior inconsistent statements of the victim, and similar such items. Yes, the evidence of the suicide may very well have buttressed the victim's credibility but it was not "exculpatory or impeachment evidence". *See Treiber, supra.* Finally, as there were no details (medical records, statements to a counselor, etc.) of the attempted suicide there would be nothing for Appellant's trial attorney to investigate had the trial been stopped to allow for such investigation. The victim attempted to cut her wrists with a scissor a few days before the trial. Her mother found her and intervened. Appellant's trial counsel was given this information the very day after it came into the Commonwealth's possession. That is all. It either happened or it did not. Cross-examination is the way to

14

test the truth and Appellant's trial counsel was given full latitude to do so. The Assistant District Attorney proffered the idea of a continuance to allow Appellant's trial counsel to investigate but there was no taker. N.T. 1/20/16 p. 161. Understandably so because there was nothing to explore.

## Interpreter

Next, Appellant claims that the court abused its discretion when it "overruled the defense objection and the post-sentence motion based on the inadequacy, lack of qualifications and extra-judicial conversations of the interpreter." These matters were not preserved through timely contemporaneous objections at trial the therefore they have been waived. See e.g. Common ea th v. Al, i 10 A.3d 282, 293 (Pa. 2010); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

At trial, defense counsel brought to the court's attention a claim that a question posed by him during his cross examination of Angelica Magallanes, the victim's mother was erroneously translated. N.T. 1/20/16, pp. 206-10. Specifically, defense counsel claimed that he had asked "whether or not M.M. had skipped school in the past" and the interpreter translated this to "whether or not M.M. had been *absent* from school in the past." *Id.* at 206-07 (emphasis added). Defense counsel did not actually *object* but stated the following: "I would just ask that you caution the interpreter to use the words that we use." Id. at 207. Following this request, the interpreter was called to side bar and the court inquired about defense counsel's claim. In response, the interpreter explained that "there's no real word in Spanish for, you know, skipping in the sense of

15

deliberately failing to go." *Id.* at 209. Defense counsel did not lodge a formal objection to the prior testimony and did not move to strike.

Appellant's trial counsel strenuously asserted, without further proof—despite what the AOPC certified interpreter said— that in Puerto Rican Spanish there is a word for "skipping" school. The court believes that the Appellant's trial counsel was trying to show that the victim was lying about being raped by the Appellant because she did not want to get in trouble for skipping school—perhaps because in the past the victim had gotten in trouble for skipping school. Assuming *arguendo* that this claim was not waived, for failure to formally object and/or moving to strike, for the following reasons it lacks merit.

First, when the victim's mother was asked whether prior to June 1 M.M. was likely to skip school she said no, that M.M. went to school, and she liked to participate, and won a lot of prizes because she liked reading, she would take part and she won first place in school. N.T., 1/20/16, p. 191. Such is not the behavior of a child who skips school.

Second, absences from school without a parent's permission, i.e., skipping school, are a subset of absences in general. When the victim's mother was asked about "absences" from school this would include all types of absences. So if the victim's mother was not aware of any "absences" from school then it is reasonable to conclude that had the interpreter used the word that Appellant wanted used to describe skipping school he would have gotten the same answer that the victim's mother gave.

Third, other than a theory about the victim's skipping school the defense made

16

no offer of proof other than a bald suggestion that she had a history skipped school. No school records were offered to support this allegation.

Fourth, we note that the Appellant was free to explore this alleged discrepancy through further cross-examination but made no request to re-examine the witness. In light of these circumstances the court respectfully submits that the AOPC certified Spanish interpreter's translation was correct and regardless of the supposed existence of a Puerto Rican Spanish word for "skip" the Appellant's claim is without merit.

Finally, in paragraph number 4 of his Statement of Matters Complained of on Appeal Appellant challenges the qualifications of the Interpreter and raises a claim concerning "extra-judicial conversations of the interpreter." These claims have been waived. Delaware County engages AOPC certified interpreters. The Appellant did not request any voir dire of the interpreter before or after the interpreter was administered the oath. By failing to object generally to the qualifications of the interpreter and by failing to inquire as to the interpreter's certifications/qualifications the Appellant waived any later objection. Regarding Appellant's complaint of *"extra-judicial conversations of the interpreter," again no timely objection was made. Accordingly, the record is devoid of facts that might form the basis of this claim and the Court is unable to address its merits.*

### Sentence Imposed

In his final issue, Appellant asserts that the sentence imposed was harsh and

17

excessive under the circumstances.

> Our Court has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

*Commonwealth v. Harvard*, 64 A.3d 690, 701 (Pa. Super. 2013) (internal citation omitted).

The court submits that the Appellant's sentence was not excessive. In the case *sub judice*, before imposing the Appellant's sentence, this court considered the factors set forth in 42 Pa.C.S.A. § 9721(b) including the nature and seriousness of the crime; the age, family status, education and employment status of the Appellant; the statements of the Commonwealth and defense counsel; the Appellant's sentencing guidelines; the rehabilitative needs of the Appellant; and the protection of the public. *See* N.T. 5/12/16 pp. 32-33. The court considered the Psycho-Sexual Evaluation and the Pre-Sentence Investigation and the particular facts set forth therein including the

18

Appellant's evident lack of remorse and failure to accept responsibility in the face of overwhelming evidence of his guilt. The court also considered the Sexual Offender Assessment Board (SOAB) evaluation. The court considered Appellant's testimony at sentencing which served to corroborate the findings set forth in the reports secured in anticipation of sentencing. The sentences for each count fall within the standard range suggested by the Pennsylvania Sentencing Guidelines. Based on this record, the claim that an excessive sentence was imposed fails. See generally Commonwealth v. Swope, 123 A.3d 333, 337 (Pa. Super. 2015)

## III. Conclusion

In light of the aforementioned, it is respectfully submitted that the verdict is fully supported by the record and applicable legal authority, and that there is no merit to Appellant's appeal. It is for the reasons set forth above that this court respectfully submits that Appellant's Judgment of Sentence be affirmed.

BY THE COURT:

GREGORY M. MALLON, JUDGE

2017 JAN 30 PM 12: 27

FILED

19